Inman R. BANKS, Plaintiff,
and

Adolphus Walker et al., Plaintiffs-
Intervenors,

v.

SEABOARD COAST LINE RAILROAD
COMPANY, et al., Defendants.

Civ. A. No. 14124.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 21, 1973.

See also, D.C., 51 F.R.D. 304.

Elizabeth Rindskopf, George L. Howell, Atlanta, Ga., Jack Greenberg, New York City, for plaintiff.

Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, Savannah, Ga., for Seaboard.

Mulholland, Hickey & Lyman, Washington, D. C., for Brotherhood of Railway Carmen of the U. S. and Canada.

Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for Deft. Employees.

Huie, Brown & Ide, Atlanta, Ga., for Union International Brotherhood, and others.

## ORDER

MOYE, District Judge.

The above action having come before the Court for trial without a jury, and testimony, agreements of counsel, briefs and documentary evidence having been received and considered, the following constitute findings of fact and conclusions of law pursuant to Rules 52(a) and 58, Fed.R.Civ.P.:

## FINDINGS OF FACT

1. Plaintiff Inman R. Banks is a Negro employee of the defendant Seaboard Coast Line Railroad Company (SCL) and is represented by the defendant Brotherhood of Railway Carmen of the United States and Canada (BRC). He was employed by SCL's predecessor Seaboard Air Line Railroad Company (SAL) on February 1, 1936, as a coach cleaner, and was promoted to carman helper June 1, 1937.

2. Plaintiff-intervenor Adolphus Walker is a Negro employee of SCL and is represented by BRC. He was employed by SAL as a car yard laborer on March 17, 1947.

3. Plaintiff-intervenor Leroy Walker is a Negro employee of SCL and is represented by BRC. He was employed by SAL as a coach cleaner on January 7, 1944.

4. Plaintiff-intervenor W. H. Verden was a Negro employee of SCL until June 1, 1972 and was represented by BRC. He was employed by SAL as a coach cleaner on May 10, 1950, after 11 years' service with the Nashville, Chattanooga & St. Louis R. Co. (N. C. & St. L.) and became a carman helper on August 1, 1955.

5. Plaintiff-intervenor James Taylor is a Negro employee of SCL and is represented by BRC. He was employed as a car yard laborer by SAL on January 9, 1951 after 14 years' service with Fruit Growers' Express Company. He became a painter helper on April 5, 1951, and a carman helper on August 1, 1955.

6. Plaintiff-intervenor James Hurst is a Negro employee of SCL and is represented by BRC. He was employed by SAL as a car yard laborer on January 1, 1946.

7. Plaintiff-intervenor Thomas Patten is a Negro employee of SCL and is represented by defendant International Brotherhood of Firemen & Oilers, Helpers, Roundhouse and Railway Shop Laborers (IBFO). He was employed by SAL as a shop laborer on September 11, 1948, after 4 years' service with the N. C. & St. L., and became a car yard laborer on August 21, 1953. He is presently disabled.

8. Plaintiff-intervenor Calop Binion is a Negro employee of SCL and is represented by BRC. He was employed by SAL on September 8, 1941 as a car yard laborer.

9. Defendants Herbert Gaff and J. H. Huggins, Jr. are white employees of SCL and members of BRC, and represent a class of similarly situated white employees whose seniority rights would be adversely affected should plaintiff and plaintiff-intervenors prevail.

10. The Civil Rights Act of 1964 became effective on July 1, 1965. The number of employees in carman's pay status—including journeyman carmen, "set-up" carman helpers, and "upgraded" carman apprentices—at Howell's Yard (formerly an SAL facility and an operation of SCL since the merger of SAL with the Atlantic Coast Line Railroad Company in 1967) has remained relatively constant since that date.

11. On the effective date of Title VII, there were no Negro employees in carman's pay status; at present, there are 13 blacks in this category, or 36 per cent of the total.

12. In the second half of 1965, one employee was promoted to carman's pay status: plaintiff Banks. One black coach cleaner became a carman helper during the same six months.

13. In 1966, R. G. McLarty, who had been a carman apprentice since April, 1965, was upgraded to carman's pay. McLarty is white.

14. In 1967, plaintiff-intervenor Leroy Walker was promoted to carman helper, plaintiff-intervenor James Taylor was "set-up" to carman's pay, and one black laborer became a carman helper.

15. In 1968, plaintiff-intervenors W. H. Verden and Leroy Walker were "set-up" from carman helper's to carman's pay, one black coach cleaner was promoted to carman helper, and one white carman apprentice, who subsequently resigned, was hired.

16. In 1969, two qualified carmen were employed from other jobs on the SCL system; one of these is a Negro. One black carman helper was set up; two black laborers, including plaintiff-intervenor Hurst, became carman apprentices, while two other black laborers, one of whom was plaintiff-intervenor Adolphus Walker, became carman helpers. Testimony also indicated that apprenticeships were offered to plaintiff-intervenors Binion and Patten during 1969, who rejected the offers for personal reasons.

17. In 1970, three black carman apprentices, including plaintiff-intervenor Hurst, were upgraded, as was one white carman apprentice. One black laborer became an apprentice and three white apprentices were hired.

18. In 1971, three carman apprentices, one of whom is black, were upgraded, one black carman helper was set up, and five white apprentices were hired.

19. In 1972, one qualified carman was hired from another railroad; he is white. Plaintiff-intervenor Binion became a carman apprentice, and plaintiff-intervenor Adolphus Walker was set up. Four new apprentices, all white, were hired, and four were upgraded.

20. So far this year (1973), plaintiff-intervenor Binion and two other carman apprentices have been upgraded.

21. Plaintiff's counsel introduced statistical evidence to the effect that the average time of progression for white employees from date of hire to carman's seniority date is 10.2 years. Defendant SCL introduced statistics showing that the average time from an employee's seniority date as a carman helper to his seniority date as a carman is 12.3 years.

22. The age limitation on carman apprenticeships was 16 to 21 years until 1960, when the upper age limit became 25. In March of 1968, prior to the effective date of the Age Discrimination in Employment Act, SCL and BRC abolished the maximum age requirement.

23. Plaintiff Banks filed charges with the EEOC on March 12, 1968, and again on August 6, 1968, and on April 2, 1970, naming BRC and SCL as respondents. Plaintiff-intervenor Verden also filed an EEOC charge, but no "suit letter" has been issued by the Commission.

24. Plaintiff's counsel contends that the plaintiff-intervenors are entitled to back pay from March 12, 1966, as shown

on the attached Exhibit A, and to seniority based upon an "adjusted" seniority date computed by adding some average training period to the initial date of hire of each. Plaintiff Banks is said to be entitled to this seniority remedy without regard to considerations of the statute of limitations. The defendants' position is that plaintiff and plaintiff-intervenors were placed in higher positions as soon as possible after July 1, 1965.

## CONCLUSIONS OF LAW

■ 1. This Court has jurisdiction of the parties and of the subject matter *sub judice.* 42 U.S.C. §§ 1981, 2000e–5 (f); 28 U.S.C. § 1343.

■ 2. The back pay claims of plaintiff Banks are barred by the Georgia statute of limitations, in that Banks achieved full carman's pay more than two years prior to the filing of his charge with the EEOC. United States v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973).

■ 3. As the above findings of fact show, there has been no stubborn continuance by the defendants of pre-Title VII acts of discrimination, and no effort or effect of perpetuating these past acts by the "lock-in" effect of a discriminatory seniority system. For this reason, the cross-craft relief mandated by the Fifth Circuit in United States v. Jacksonville Terminal Co., 451 F.2d 418 (1972), is not necessary here. To the contrary, the record shows that the defendants have done well.

■ 4. The law does not require a fruit-basket turnover as of the effective date of Title VII. Instead, the standard to be applied is that of affording to each employee his "rightful place", as defined in both *Jacksonville Terminal, supra,* and in *Local 189 v. United States,* 416 F.2d 980 (5th Cir. 1969). This means that when the first post-Act vacancy occurs in the sought-for job, a black employee must be given the opportunity to fill that vacancy on the basis of his accumulated seniority, untrammeled by discriminatory vestiges of pre-Act restrictions.

■ 5. Under the facts as presented, it appears that black employees, including plaintiff-intervenors, have since July, 1965, been given the chance to fill the jobs they sought as soon as vacancies occurred.[1]

■ 6. Back pay and seniority are integrally linked to the physical performance of the job; accordingly, no back pay is due to plaintiff-intervenors and no seniority adjustments are necessary. There is no evidence that the seniority system, the apprenticeship or training requirement, or the car inspectors' examination were racially motivated.

7. Therefore, the Court finds the position of defendant SCL supported in fact and by law, and finds for the defendants herein.

8. This judgment constitutes findings and conclusions with respect to the EEOC charges of plaintiff Banks filed March 12, 1968, August 6, 1968, and April 2, 1970, as well as the EEOC charge of plaintiff-intervenor Verden filed May 6, 1968. 42 U.S.C. § 2000e–5 (e).

■ 9. The Act provides for attorneys' fees for the "prevailing party." 42 U.S.C. § 2000e–5(k). This issue was raised on final argument by plaintiff's counsel, although no evidence was presented on the point. Having failed to prevail, plaintiff's counsel is entitled to no such award. Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972).

Exhibit A to follow.

---

1. The Court finds that normally it is the promotion of an employee to "set up carman" rank which indicates an immediately preceding vacancy—not the graduation, after training and testing, of that "set up carman" to journeyman carman rank. A "set up carman" earns a carman's pay.

EXHIBIT A

| NAME | ADJUSTED SENIORITY DATE | SUBSEQUENT ASSIGNMENT | INITIAL RECEIPT OF JOURNEYMAN'S RATE | BACK PAY ENTITLEMENT |
|---|---|---|---|---|
| Banks | 2/01/36 | Helper (8/1/55) | 11/01/69 | |
| Binion | 9/08/41 | Apprentice (8/15/72) | 08/15/72 | (1) Difference between laborers rate and journeyman's rate 3/12/66—8/15/72 <br> (2) Difference between apprentice and journeyman's rate 8/15/72—3/1/73 |
| Walker | 1/07/44 | Helper (6/12/67) | 04/23/68 | (1) Difference between laborers rate and journeyman's rate 3/12/66—6/12/67 <br> (2) Difference between helpers rate and journeyman's rate 6/12/67—4/23/68 |
| Hurst | 1/01/46 | Apprentice (5/7/69) | 05/07/69 | (1) Difference between laborers rate and journeyman's rate 3/12/66—5/7/69 <br> (2) Difference between apprentice rate and journeyman's rate 5/7/69—date of receipt of journeyman's rate |
| A. Walker | 3/17/47 | Helper (8/22/69) | 02/05/72 | (1) Difference between laborers rate and journeyman's rate 3/12/66—8/22/69 <br> (2) Difference between helper rate and journeyman's rate 8/22/69—2/5/72 |
| T. Patten | 9/11/48 | | | (1) Difference between laborers rate and journeyman's rate 3/12/66—present |
| Verden | 4/08/50 | Helper (8/1/55) | 06/11/69 | (1) Difference between helper rate and journeyman's rate 3/12/66—6/11/69 (retired 6/1/72) |
| Taylor | 12/28/50 | Helper (8/1/55) | 06/07/67 | (1) Difference between helper rate and journeyman's rate 3/12/66—6/7/67 |