Gary ACKERMAN and Rita Ackerman,
Plaintiffs,

v.

The BOARD OF EDUCATION OF the
CITY OF NEW YORK et al.,
Defendants.

No. 71 Civ. 5106.

United States District Court,
S. D. New York.

Dec. 27, 1974.

See also, D.C., 322 F.Supp. 274.

Fasteau & Feigen, New York City, for plaintiffs; Marc Feigen Fasteau, Brenda Feigen Fasteau, New York City, of counsel.

Adrian P. Burke, Corp. Counsel, New York City, for defendants; Margaret Gold, New York City, of counsel.

### OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW

LEVET, District Judge.

This is an action by a school teacher and his wife against the New York City Board of Education and various individual agents of the Board of Education alleging discrimination on the basis of sex in its policy of granting child care leave. Plaintiff Gary Ackerman, the husband of plaintiff Rita Ackerman, applied for child care leave under former Section 107 of the Board of Education By-Laws. This was the by-law under which female teachers routinely requested and were granted maternity and child care leave. Plaintiff's request was denied. He did not report to work at the beginning of the 1970–1971 school year and has not worked as a teacher in the New York City school system since.

Subsequent to the initiation of this action, the Board of Education amended its by-laws to eliminate the alleged discrimination. Thereafter, plaintiff's teaching license was terminated for reasons unrelated to this suit. In a memorandum decision (hereinafter "memo. dec. of February 14, 1974") denying a motion for class action status, District Judge Bonsal ruled that the said termination of plaintiff's teaching license precluded the injunctive remedy sought by plaintiff and that the amendment to the by-laws had mooted the question of declaratory relief, except for the claim for monetary damages and attorneys' fees, citing Diffenderfer v. Central Baptist Church, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972).

Remaining for determination are the claim for attorneys' fees and plaintiff Gary Ackerman's claim to monetary relief in the amount which he alleges he would have earned had he been granted child care leave and consequently been allowed to teach as a substitute on a per diem basis.

After hearing the evidence presented by the parties, examining the exhibits, the pleadings, the briefs and the proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. This court has jurisdiction over the subject matter of this action. (28 U.S.C. §§ 1331, 1343, 2201 et seq., 42 U.S.C. § 1981 et seq., United States Constitution.)

2. Plaintiff Gary Ackerman was employed by defendant Board of Education as a regular substitute teacher from September 1965 until June 1968 under a substitute license granted him on September 1, 1965. (Pl. Ex. 2; Pl. Ex. 16; Tr. 99.)[1]

3. Plaintiff Gary Ackerman was employed by defendant Board of Education from September 1968 until September 1970 under a regular teacher's license issued as a result of his having taken and passed an examination given under the authority of Chap. 810, laws of 1967. (Pl. Ex. 1; Pl. Ex. 2; Def. Ex. C.)

---

1. References preceded by "Pl. Ex." or "Def. Ex." are to the exhibits admitted into evidence during trial on behalf of plaintiff or defendant respectively; references preceded by "Tr." are to pages of the stenographic transcript of the trial.

4. For the period September 1, 1968 to June 30, 1973 plaintiff Gary Ackerman was assigned to Shimer Junior High School, Junior High School 142Q, located in District # 28, County of Queens, New York City, N.Y. (Tr. 7, 11.)

5. Plaintiff Gary Ackerman's regular teaching license mandated the completion of certain educational requirements by July 1, 1972. (Tr. 106; Def. Ex. C.)

6. No extensions of time to complete these requirements are granted to women on maternity leave. (Tr. 107.)

7. The failure of plaintiff Gary Ackerman to fulfill said statutory requirements (Finding 5) resulted in the termination, for cause, of his license on June 30, 1973. (Tr. 104, 106, 65–67; Def. Ex. C.)

8. On November 4, 1969, while plaintiff Gary Ackerman was teaching at Shimer Junior High School, a daughter was born to him and his wife, plaintiff Rita Ackerman. (Pl. Ex. 3; memo. dec. of February 14, 1974.)

9. On September 9, 1970 plaintiff Gary Ackerman applied for a leave of absence without pay for the purpose of child care, pursuant to Section 107 of the By-Laws of the Board of Education of New York City entitled, "By-Laws Governing Leave of Absence for Maternity and Child Care." This application was presented to Desiree E. Greenridge, acting principal of Shimer Junior High School, to which plaintiff Gary Ackerman was assigned. Acting principal Greenridge marked the application, "Not Recommended." Thereafter, during the period September 11, 1970 to April 29, 1971, plaintiff Gary Ackerman presented his application for child care leave to the Supervising Superintendent of District 28, then to the Deputy Superintendent of Personnel of the Board of Education and finally to the Chancellor of the Board of Education. Each of these employees of the Board of Education refused to approve Gary Ackerman's application for child care leave under Section 107 of defendants' by-laws. (Pl.

Exs. 3, 4, 8, 9, 11, 12, 13; memo. dec. of February 14, 1974.)

10. On September 9, 1970, the date of plaintiff Gary Ackerman's application for child care leave, said Section 107 of the Board of Education's by-laws provided in relevant part:

"1. As soon as any regular or non-regular employee in the teaching staff shall become aware of her pregnancy, she shall apply for a leave of absence for the purpose of maternity and child care. * * *" (Pl. Ex. 5) This leave above referred to was without pay although female teachers absent on such leave were allowed to teach as per diem substitutes. (Tr. 92; memo. dec. of February 14, 1974.)

11. On November 28, 1974, Section 107 of the Board of Education's by-laws was amended, effective September 1, 1973, to provide child care leave "to a natural or adoptive parent upon application," inferentially including males. (Pl. Ex. 6; memo. dec. of February 14, 1974.) That leave is also without pay and teachers absent on such leave are allowed to teach only as per diem substitutes. (Tr. 92, 93.)

12. The effect of this amendment to Section 107 of the Board of Education's by-laws was to relieve that section of any legal infirmity which plaintiffs sought to ascribe thereto, and this fact, when taken in conjunction with Finding of Fact 22, below, effectively moots the question of the correctness of defendants' denial of child care leave to plaintiff Gary Ackerman.

13. Of his own volition, plaintiff Gary Ackerman failed to report for work at his teaching position at Shimer Junior High School on or about the end of September 1970 and has not worked as a teacher in the New York City school system since that time. (Tr. 13–14, 21–22; memo. dec. of February 14, 1974.)

14. The defendant Board of Education took no action to terminate plaintiff Gary Ackerman's regular license prior to June 30, 1973 and he, just as any fe-

male teacher, could have obtained and performed substitute teaching service under his regular license until that date. (Tr. 103, 104, 108.)

15. Gary Ackerman would have been reissued his substitute teaching license upon surrender of the regular license and could have performed substitute teaching service thereunder; however, he did not do so. (Tr. 101, 103, 104, 108.)

16. During the period September 1, 1970 to June 30, 1973 the central office of defendant Board of Education did not control the individual hiring of substitute teachers. Hiring decisions were exclusively within the authority of the school principals at each school. (Tr. 109–110.)

17. In order for plaintiff Gary Ackerman to obtain employment as a substitute teacher, he was required to make individual application to each school where substitute teaching service was sought. (Tr. 109–110.)

18. At no time after September 1, 1970 did plaintiff Gary Ackerman apply to any school within the New York City school system for substitute teaching. (Gary Ackerman's testimony, Tr. 80–84.)

19. The September 24, 1974 letter (Pl. Ex. 15) from Michael Schenkler, Assistant Principal at The Jim Thorpe School in New York City, does not bind the defendant Board of Education by its statement that plaintiff Gary Ackerman was ineligible to teach as a substitute.

20. I find that the defendant Board of Education at no time prevented plaintiff Gary Ackerman from seeking employment as a substitute teacher.

21. I find that plaintiff Gary Ackerman presented no proof of any economic loss as a result of the Board of Education's aforesaid denial of child care leave which he requested.

22. I find that plaintiff Gary Ackerman has failed to prove that he is entitled to an award of damages for "back pay."

23. Plaintiffs' action seeking a declaration that Section 107 of the Board of Education's by-laws was contrary to rights guaranteed by federal laws and the federal constitution has been mooted.

24. The valid termination of plaintiff Gary Ackerman's teaching license for reasons unrelated to this suit or damage claim thereunder precludes this court from enjoining the defendant Board of Education from discharging him as a teacher or from ordering the Board of Education to grant him child care leave. (Memo. dec. of February 14, 1974.)

25. Effective March 24, 1974, Title VII of the 1964 Civil Rights Act ("Title VII") was amended to include employment discrimination by State agencies, thereby bringing state and city employees, including school teachers, within its ambit. (Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103; memo. dec. of February 14, 1974.) Section 706 of Title VII provides that "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs * * *." 42 U.S.C. § 2000e–5(k).

26. Subsequent to March 24, 1972 plaintiffs filed a charge with the Equal Employment Opportunity Commission ("EEOC") which resulted in a "determination by the EEOC District Director on December 29, 1972. This determination, while stating that there was reason to believe that the defendant Board of Education's policy with regard to child care leave discriminated against male teachers, noted that at the time of said determination the defendant Board of Education had already evidenced its intent to change its policy regarding child care leave to comply with Title VII. (Pl. Ex. 14; memo. dec. of February 14, 1974.)

27. Thereafter, on April 25, 1973 plaintiffs filed a "Second Amended Complaint" in this action to state causes of action under Title VII, Executive Order

11246 and the Education Amendments of 1972, Pub.L. No. 92–318, 86 Stat. 235. (Memo. dec. of February 14, 1974.)

28. Plaintiffs have failed to prove by a fair preponderance of the credible evidence that their endeavors, rather than the 1972 amendment to Title VII, were the sole or primary impetus behind the amendment to defendant's by-laws.

29. Plaintiffs offered no evidence of either the extent of attorneys' services or the reasonable value thereof.

30. I find that plaintiffs have failed to prove by a fair preponderance of the credible evidence that they qualify as "the prevailing party" for purposes of the discretionary allowance of attorneys' fees.

## DISCUSSION

### MONETARY RELIEF

Plaintiff Gary Ackerman alleges damages in the amount of $18,800. He alleges that these damages are equal to what he would have earned had he been granted leave pursuant to Section 107 of the Board of Education's by-laws and thus been permitted to work as a substitute teacher on a per diem basis, in effect a "back pay" award. Plaintiff claims the money relief requested is explicitly provided for under Title VII as amended by the Equal Employment Opportunity Act of 1972. Pub.Law 92–261, 86 Stat. 103 (March 24, 1972).

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 et seq., prohibits employment discrimination by state governments and their political subdivisions and agencies on the basis of sex and authorizes law suits by private individuals against these entities for redress of such discrimination in federal district court, 42 U.S.C. § 2000e–5(f)(1), (3)–(5).

The relief which federal courts are authorized to provide in such suits is specifically set forth in 42 U.S.C. § 2000e–5(g). The court may, inter alia, "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate."

The burden upon the party seeking "back pay" damages is clear. In order for a party to be entitled to damages there must be demonstrated by the required burden of proof the fact that the allegedly discriminatory policy was the cause of the claimed injury. A naked claim of discrimination or discriminatory practices or policies will not justify invocation of the court's equitable powers. Dewey v. Reynolds Metals Co., 429 F.2d 324 (6th Cir. 1970), affd. 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971); Gerstle v. Continental Airlines, Inc., 358 F.Supp. 545 (D.Colo.1973); 42 U.S.C. § 2000e–5.

Plaintiff Gary Ackerman contends that as a result of defendants' employment discrimination in refusing to grant him child care leave, he was not permitted to teach as a substitute during his absence without leave, a leave which he admittedly took on his own volition. However, the only support for this contention is plaintiff Gary Ackerman's *belief* that he was, in effect, not in good standing with the Board of Education and would have been prevented from teaching as a substitute had he applied. (Gary Ackerman's testimony, Tr. 31–32.) To bolster this belief, Gary Ackerman points to the Schenkler letter of September 24, 1974 (Pl.Ex.15) and to two communications received from agents of the Board of Education requesting that he resign or threatening "further action." (Pl.Exs. 7, 10.) I have found that the Schenkler letter does not bind the defendant Board of Education. (Finding 19.) Such beliefs obviously are not adequate to show that defendants prevented plaintiff Gary Ackerman from teaching as a substitute on a per diem basis.

The defendant Board of Education contends that at no time during the period at issue, September 1, 1970 to June

30, 1973, did defendant Board of Education prohibit plaintiff Gary Ackerman from seeking employment as a substitute teacher. Mark Mendelsohn, Administrator of the Office of Staff Services of the Division of Personnel of the Board of Education, testified at trial that prior to June 30, 1973 no legal action or disciplinary proceeding had ever been brought to remove Gary Ackerman's regular teaching license. (Tr. 102–105; Finding 14.) Mr. Mendelsohn further testified that Gary Ackerman's regular license remained valid until June 1973 and that substitute teaching could have been obtained under said regular license. Alternatively, according to Mr. Mendelsohn's testimony, Gary Ackerman would have been reissued his substitute teaching license upon application and could have performed substitute teaching thereunder. (Mendelsohn's testimony, Tr. 101–108; Findings 14, 15.)

■ I must therefore conclude that the defendant Board of Education did not prevent plaintiff Gary Ackerman from seeking employment as a substitute teacher during the period in question. No alleged discriminatory policy of the defendant Board of Education was the cause of any alleged injury to plaintiff Gary Ackerman. For this reason plaintiff Gary Ackerman is not entitled to damages. Gerstle, 358 F.Supp. at 552.

■ There is yet another basis for refusing an award on "back pay" damages in this action. In order to establish eligibility for any award of back pay under equal employment opportunities law, a claimant must prove as a first step a sufficient investment of time and effort to show that he was ready, willing and able to work. Failing such a showing plaintiff is not entitled to a "back pay" award. United States v. Wood, Wire and Metal Lath. Int. Union Local 46, 328 F.Supp. 429 (S.D.N.Y. 1971), affd. 471 F.2d 408 (2d Cir. 1973). Mr. Mendelsohn testified that the central office of defendant Board of Education does not control the individual hiring of substitute teachers; hiring decisions are exclusively within the authority of the school principals at each school, and, in order to find employment as a substitute teacher, *an applicant must make individual application to each school where substitute teaching service is sought.* (Emphasis supplied.) (Tr. 109–110; Finding 17.) However, by his own admission, plaintiff Gary Ackerman never applied to any school in the New York City school system for substitute teaching service from September 1970 to June 1973. (Gary Ackerman's testimony, Tr. 80–84; Finding 18.)

Where the evidence discloses, as it does in the case at bar, that any alleged deprivation was the result of plaintiff's own volition, an award of "back pay" is inappropriate regardless of any allegedly discriminatory conduct. Gerstle, 358 F. Supp. at 553.

I conclude from the foregoing facts that plaintiff Gary Ackerman suffered no economic loss as a result of any act or acts of the defendant Board of Education and is not, therefore, entitled to an award of damages for "back pay." (Findings 21, 22.)

Therefore, plaintiffs' action for declaratory and monetary relief has been mooted by the amendment to Section 107 of the by-laws and by plaintiff Gary Ackerman's failure to prove money damages. (Finding 12.)

## ATTORNEYS' FEES

Remaining is the question of attorneys' fees. Plaintiffs claim an award of attorneys' fees under 42 U.S.C. § 2000e–5(k). By this provision "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs." Plaintiffs contend they are the "prevailing party" within the meaning of this provision, notwithstanding the mootness of their action for injunctive and declaratory relief and the failure of plaintiff Gary Ackerman to establish money damages, basing their contention on the allegation that their suit and the Equal Employ-

ment Opportunity Commission's "determination" of December 29, 1972 prompted the defendant Board of Education to amend its by-laws, thereby removing the legal infirmity which plaintiffs sought to ascribe to it. In support of their contention plaintiffs cite Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970), LeBlanc v. Southern Bell Telephone and Telegraph Co., 333 F.Supp. 602 (E.D.La.1971), aff'd per curiam, 460 F.2d 1228 (5th Cir. 1972), and Fogg v. New England Telephone and Telegraph Co., 346 F.Supp. 645 (D.N.H.1972), three decisions in which the court awarded attorneys' fees to plaintiffs whose actions for injunctive and/or declaratory relief or damages were mooted by the cessation of discriminatory employment practices by the employer after commencement, but prior to trial, of an action brought by an employee or prospective employee under Title VII.

■ This court does not agree with plaintiffs' contention. Plaintiffs are not "prevailing" parties, even to the limited extent of Parham, supra. We cannot conclude on the basis of the available evidence that either the plaintiffs' action or the Equal Employment Opportunity Commission's "determination," or both, was the impelling force behind the amendment to defendant's by-laws. (Finding 28.)

The facts in Parham show that the plaintiff, a black, had filed a charge with the Equal Employment Opportunity Commission after his application for employment had been rejected by the defendant. The Commission attempted, without success, to resolve the conflict by conciliation. After being advised by the Commission of his privilege to prosecute an action under 42 U.S.C. § 2000e–5(e), plaintiff filed his complaint. The successful defense at trial consisted primarily of a showing by the defendant-employer that, subsequent to the complaint but prior to trial, defendant had adopted an affirmative action program which resulted in increased hiring of blacks. The Court of Appeals for the Eighth Circuit affirmed as to the individual plaintiff's action but remanded as to the issue of attorney's fees, stating:

"Although we find no injunction warranted here, we believe Parham's lawsuit acted as a catalyst which prompted the appellee to take action implementing its own fair employment policies and seeking compliance with the requirements of Title VII."

On that basis the court awarded reasonable attorney's fees to plaintiff. However, the court also held that the defendant had engaged in racially discriminatory employment practices for some two to three years after the effective date of Title VII (three to four years after enactment thereof) and that Parham's action was *the* impetus behind the defendant-employer's affirmative action program.

Both LeBlanc and Fogg are substantially similar to Parham in that they involved defendant-employers who had engaged in discriminatory employment practices for a number of years after the effective date of Title VII and in all three cases the court determined that the sole or primary impetus behind the corrective measures taken by the defendant-employers was the prosecution of the action by the respective plaintiffs.

The facts in the present case differ substantially from those in Parham, LeBlanc and Fogg. Title VII did not apply to the employment practices of the defendant Board of Education until the effective date of the amendment, March 24, 1972. (Finding 25.) When the Equal Employment Opportunity Commission Director issued his "determination" of December 29, 1972 he stated:

"I note that Respondent has expressed, by its agents in oral statements during the investigation, its intent to change its policy regarding child care leave to comply with Title VII * * * ." (Pl. Ex. 14; Finding 26.)

Although the amendment to Section 107 of the by-laws did not become effective until the beginning of the following

school year, I find a clear indication that the defendant Board of Education was working towards compliance with Title VII shortly after being brought within its purview by the 1972 amendment and as a direct result thereof. A showing by plaintiffs of mere chronology of events—the Equal Employment Opportunity Commission "determination," followed by the amended complaint under Title VII, followed by the amendment to defendant's by-laws—is insufficient to establish that plaintiffs are the "prevailing party," even to the limited extent of Parham. Upon the limited evidence before the court, I can only conclude that the 1972 amendment to Title VII, rather than the Equal Employment Opportunity Commission "determination," alone or together with the plaintiffs' prosecution of this suit, was the primary "catalyst" behind the amendment to Section 107 of defendant's by-laws. Plaintiffs are not the "prevailing party" within the meaning of 42 U.S.C. § 2000e-5(d) and are not entitled to attorneys' fees. Banks v. Seaboard Coast Line R. Co., 360 F.Supp. 1372 (D.C.Ga.1973). (Finding 31.)

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter of this action. 28 U.S.C. §§ 1331, 1343, 2201 et seq.; 42 U.S.C. § 1981 et seq; United States Constitution.

2. Plaintiff Gary Ackerman has failed to prove that he suffered any economic loss as a result of defendant Board of Education's denial of child care leave which he requested. (See Findings 18, 20, 21 and Discussion.)

3. Plaintiffs' action for injunctive and declaratory relief has already been mooted. (See February 14, 1974 memorandum decision of Judge Bonsal and my Findings 23, 24.)

4. The facts of this case as heretofore found preclude plaintiffs from being entitled to any other equitable relief.

5. Plaintiff Gary Ackerman has failed to prove that he is entitled to any damages in respect to monetary claims against the Board of Education.

6. Plaintiffs are not the "prevailing party" within the meaning of 42 U.S.C. § 2000e-5(k) and are not entitled to any allowance for attorneys' fees. (See Findings 28, 29, 30 and Discussion.)

7. Defendants are entitled to judgment dismissing the complaint. However, no costs are allowed to defendants.

Settle judgment promptly upon notice pursuant hereto.