Anna TOBELUK and Henry A. Tobeluk, minors, by their father and next friend John Tobeluk, et al., Appellants,

v.

Marshall L. LIND, as Commissioner of Education, et al., Appellees.

No. 3477.

Supreme Court of Alaska.

Jan. 26, 1979.

Bruce C. Twomley, Alaska Legal Services Corp., Anchorage, Stephen E. Cotton, Center for Law & Education, Cambridge, Mass., and John S. Hedland, Rice, Hoppner & Hedland, Anchorage, for appellants.

Richard M. Burnham, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

After extensive litigation the parties to this case entered into a settlement, pursuant to which a consent decree was entered. The question now presented on appeal is whether the superior court erred in denying appellants an award of attorneys' fee as prevailing parties.

In 1972, a civil action was initiated by Alaska Native children of secondary school age to compel the provision of secondary schools in their communities of residence. Their claims alleged violation of the Alaska

Constitution, Art. VII, § 1 for failure to provide the schools, as well as equal protection and racial discrimination claims under the U.S. Constitution, Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, 2000d, and Art. I, § 1 of the Alaska Constitution.

Appellants' claims under Art. VII, § 1 of the Alaska Constitution were dismissed by the trial court and that dismissal was upheld by us on appeal.[1] The equal protection and racial discrimination claims were remanded for trial. Soon afterwards the appellees initiated settlement negotiations. A year of protracted negotiations followed, during which this case was the focus of a good deal of political attention.

A tentative agreement was reached in December 1975, but it was upset when the governor presented to the legislature a bond proposal for one-half the amount called for in the draft consent decree. Negotiations resumed and, in May 1976, the State Board of Education adopted a set of regulations implementing local secondary school programs, which had been drafted by the appellants, negotiated by the parties, and incorporated in the December draft settlement agreement. On several occasions during the negotiations, the appellees submitted proposals to the effect that a provision be added requiring each party to bear its own costs. These were rejected by the appellants. In September 1976, the parties concluded a settlement, consisting of a statement of agreed facts and a consent decree. A final order approving the settlement was entered in October 1976. Both are silent on the issue of costs and attorney's fees. The consent decree requires the state to engage in a $20 million construction program for local secondary schools and to initiate steps to secure funding through bond initiatives[2] for secondary school construction in the 126 villages where the members of the appellants' class reside.

Additionally, the superior court retained jurisdiction over the case and required the Department of Education to submit progress reports on the implementation of the decree every four months.

The appellants then filed a notice of taxation of costs with the clerk of trial courts, requesting fees and costs that were incurred between October 1974, when the appellants began discovery related to the prosecution of their equal protection claim, through October 1976, when the settlement was finally approved. The total amount sought is $219,379.32, covering 3,085.75 hours of work by the attorneys and the costs of taking depositions, interviewing witnesses, and conducting the settlement negotiations.[3]

Sustaining the appellees' objection, the clerk deferred to the superior court for a determination of costs, if any, to be awarded. Ten memoranda were submitted by the parties encompassing over 300 pages, and oral argument was held on two occasions, lasting a total of over four hours.

After the second argument, the court ruled from the bench in favor of the appellees. The court concluded that, in the circumstances of the case, the plaintiffs could not appropriately be deemed the prevailing party "without some further indication that had the case gone to trial their legal position, as opposed to the relief they requested, would have been vindicated." In its order of April 22, 1977, the court stated that the plaintiffs' status as "prevailing party" could not be inferred from the settlement because of the political nature of the case. Plaintiffs appeal from the superior court's denial of costs and fees.

The issue presented is whether appellants are entitled to costs and fees under Rule 82 of the Alaska Rules of Civil Procedure[4] or

1. *Hootch v. Alaska State-Operated School System*, 536 P.2d 793 (Alaska 1975).

2. If the bond issues were not passed, the appellants reserved their legal remedies.

3. The original amount requested was much higher, but the superior court reduced the hour-

ly rate for the work and disallowed some travel expenses in a tentative decision in the appellants' favor.

4. Rule 82 provides in relevant part:
    *Attorney's Fees*
    "(a) Allowance to Prevailing Party as Costs.
    (1)

the federal Civil Rights Attorney's Fees Awards Act of 1976.[5]

The Alaska rules and the federal statute are similar in that both provide the court with the discretionary authority to award attorneys' fees to a prevailing party, and both intend fee awards to be compensatory rather than punitive.

■ Despite the above similarities, the two fee award provisions are based on dissimilar underlying policies. The purpose of Rule 82 is to partially compensate a prevailing party for the expenses incurred in winning his case. It is not intended as a vehicle for accomplishing anything other than providing compensation where it is justified. *Malvo v. J. C. Penney Co., Inc.*, 512 P.2d 575, 587 (Alaska 1973), *De Witt v. Liberty Leasing Company of Alaska*, 499 P.2d 599, 602 (Alaska 1972), *quoting Preferred General Agency of Alaska, Inc. v. Raffetto*, 391 P.2d 951, 954 (Alaska 1964); Hughes, *Award of Attorney's Fees in Alaska: An Analysis of Rule 82*, 4 UCLA–Alaska L.Rev. 129, 148 (1974). In comparison, the explicit purpose of the fee shifting provision in the federal statute, 42 U.S.C.

§ 1988, is to encourage meritorious claims which might not otherwise be brought.[6] We find it convenient, therefore, to discuss the state and federal questions separately.

### ALASKA CIVIL RULE 82

■ Civil Rule 82 provides for the awarding of attorney's fees to the prevailing party. We defined the term "prevailing party" in *Buza v. Columbia Lumber Co.*, 395 P.2d 511, 514 (Alaska 1964):

. . . [I]t has been established by case law that the prevailing party to a suit is the one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention. He is the one in whose favor the decision or verdict is rendered and the judgment entered. (footnotes omitted)

Failure to recover the full measure of relief sought or to prevail on all the issues raised does not necessarily preclude that party from "prevailing party" status, provided that he is successful with regard to the "main issue in the action." *Cooper v. Carl-*

---

. . . . .

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount."

Appellants have complied with Civil Rules 54 and 79 which prescribe the procedure for obtaining costs.

**5.** The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**6.** The legislative history states that the purpose of the Civil Rights Attorney's Fees Award Act of 1976, *supra*, is:

to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. . .

All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Admin. News, pp. 5908, 5909–10. The act neither creates new remedies nor changes the statutory provisions regarding the protection of civil rights except

it provides the fee awards which are necessary if citizens are to be able to effectively secure compliance with these existing statutes. There are very few provisions in our Federal laws which are self-executing. Enforcement of the laws depends on governmental action and, in some cases, on private action through the courts. If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

*Id.* at 6, 1976 Cong. & Admin.News, *supra*, at 5913.

*son*, 511 P.2d 1305, 1308 (Alaska 1973); *Buza v. Columbia Lumber Co., supra.* However, there is no "immutable rule that the party who obtains an affirmative recovery must be considered the prevailing party." *Owen Jones & Sons, Inc. v. C. R. Lewis Co.*, 497 P.2d 312, 313–14 (Alaska 1972) (footnote omitted). *See Continental Insurance Co. v. U. S. Fidelity and Guarantee Co.*, 552 P.2d 1122, 1125 (Alaska 1976).

Appellees suggest that where the issues have not been fully litigated,[7] the prevailing party should be determined by considering the likelihood of success on the merits. On several occasions the trial court, expressing its opinion, commented that appellants' equal protection argument was not "as insubstantial as the state would contend" and that appellants had "made a compelling case." However, ruling from the bench in favor of the appellees after the second argument, the court concluded:

> "it would not be appropriate to term the plaintiffs in this case, in light of the settlement and all surrounding circumstances, a prevailing party without some further indication that had the case gone to trial their legal position, as opposed to the relief they requested, would have been vindicated."

In its final order the court stated: "The existing record would not support a finding that the plaintiffs were likely to prevail on their State or Federal constitutional arguments."

Appellants submit that the substantial relief they obtained qualifies them as the "prevailing party." A number of facts lend support for their position. The consent decree provides a comprehensive plan for the provision of local secondary schools including $20 million in construction funds for these schools. The regulations drafted by the plaintiffs and voluntarily enacted by the state are incorporated in the decree. The court retains jurisdiction over the case until the program is substantially completed, requiring progress reports every four months. Because the funding to implement the agreement is contingent upon the passage of a bond issue, the consent decree states that if the bond issue should fail, and the decree become void, that the plaintiffs retain their legal remedies. Additionally, the parties stipulated that "the facts set forth in the Statement of Agreed Facts be considered established and the parties shall not relitigate such facts."

To refute appellants' claim of "prevailing party" status, the appellees contend that they have planned to provide local secondary school programs since 1970, and that the settlement of the case is the result of political, rather than legal, considerations and efforts. They maintain that the consent decree was merely a recognition of the termination of the suit.

Although the prevailing party is the party who prevails on the suit as a whole, *Fairbanks Builders, Inc. v. Sandstrom Plumbing & Heating, Inc.*, 555 P.2d 964, 967 (Alaska 1976), where each party has prevailed on a main issue the court retains discretion to refrain from characterizing either as the prevailing party, and a denial of attorney costs and fees in such instances is appropriate. *City of Valdez v. Valdez Development Co.*, 523 P.2d 177, 184 (Alaska 1974). The superior court's finding that appellants' status as a prevailing party could not be inferred from the settlement agreement is supported by the record.[8] The

---

7. The controversy here was resolved by the entry of a consent decree based on the parties' settlement agreement. *See* footnote 8, *infra.*

8. Both sides argue they will be penalized for settling a case before it has proceeded to a stage that would indicate their likelihood of success on the merits. But in many instances it would be possible to determine who is the prevailing party even though the settlement agreement is silent, as the pleadings and other papers on file may be enlightening on the question. *See* text accompanying footnote 15, *infra.* However, in this case the superior court specifically found:

> Plaintiffs' status as "prevailing party" within the meaning of Civil Rule 79(d) Alaska Rules of Civil Procedure cannot be inferred from the settlement, since the relief provided by the settlement could have been the result of purely political considerations and not a recognition of the merit of plaintiffs' constitutional arguments. The existing record would not support a finding that plaintiffs

consent decree does not operate as either an admission of liability or an adjudication on the merits.[9] No decision or verdict was entered in favor of either party.[10] Given the political nature of the case, it is unclear whether either party won on any of the legal issues.

We have consistently held that both the determination of "prevailing party" status and the award of costs and fees are committed to the broad discretion of the trial court. *First National Bank of Fairbanks v. Enzler*, 537 P.2d 517, 525–26 (Alaska 1975), *Adoption of V. M. C., supra*, 528 P.2d 788, 795 (Alaska 1974); *De Witt v. Liberty Leasing Co. of Alaska, supra*, 499 P.2d at 601; *Owen Jones & Sons, Inc. v. C. R. Lewis Co.,*

*Inc., supra*, 497 P.2d at 314. We will not interfere with the trial court's determination unless it is shown that the court abused its discretion by issuing a decision which is arbitrary, capricious, manifestly unreasonable, or which stems from an improper motive.[11] *Fairbanks Builders, Inc. v. Sandstrom Plumbing & Heating, Inc., supra*, 555 P.2d at 966–67. *Haskins v. Shelden*, 558 P.2d 487, 495–96 (Alaska 1976); *Adoption of V. M. C., supra*, 528 P.2d at 795. Clearly it is within the trial court's discretion to deny attorney's fees altogether. *Haskins v. Shelden, supra*, 558 P.2d at 495. Since the superior court has stated the basis for its decision,[12] and we find no evidence of error or abuse of discretion, the denial of attorney's fees under Rule 82 must be upheld.[13]

were likely to prevail on their State or Federal constitutional arguments. The question is in doubt.
   *Cf. State v. Alaska Int'l Air, Inc.*, 562 P.2d 1064, 1069 (Alaska 1977), which involved dismissal of a suit without the court's consideration of the merits of the controversy. We concluded that where there are no clear grounds for determining who is the prevailing party an award of attorney's fees cannot be made.

**9.** The proceedings involved in *Hootch v. Alaska State-Operated School System, supra*, n. 1, did not consider the merits of the remaining claims which are the subject of the settlement agreement. Absent an admission of liability, it is not clear without looking behind the express provisions that the reason for settlement was the defendant's recognition that the plaintiffs were likely to succeed on the merits. *See Clanton v. Allied Chem. Corp.*, 409 F.Supp. 282, 284 (E.D. Va.1976). This reasoning does not imply that a final adjudication on the merits is a prerequisite to an award of attorney fees, but rather that where there has been a trial on the merits, the outcome will aid in determining who is the "prevailing party."

**10.** The only issue actually adjudicated involved appellants' claims under the Alaska Constitution, Art. VII, § 1 which were dismissed and are not covered by this fee request. *Hootch, supra.*

**11.** Appellants argue that our recent decision in *Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977), requires a narrowing of the trial court's discretion under Rule 82 in the instant case because of its public interest nature. Although they are correct that *McCabe* suggests that the standards for awarding attorney's fees to successful public interest plaintiffs under both the Alaska rules and 42 U.S.C. § 1988 are "virtually identical", *McCabe* is not applicable to the case at bar. In *McCabe* we extended the rationale

of *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974). In *Gilbert* we held that since "[i]t is not the purpose of Rule 82 to penalize a [plaintiff] for litigating a good faith claim . . . . [i]t is an abuse of discretion to award attorneys' fees against a losing [plaintiff] who has in good faith raised a question of genuine public interest before the courts." 526 P.2d at 1136. Following the rationale of *Gilbert*, in *McCabe* we said that a successful public interest plaintiff "should not be penalized by Rule 82 by failing to receive full compensation for the costs of litigating issues of public importance." 568 P.2d at 994. Therefore, we held that the trial court could, in its discretion, award full attorney's fees to public interest plaintiffs. Since the present case involves the denial of fees to a plaintiff who has not clearly prevailed, the *McCabe* principle of awarding full attorney's fees to public interest plaintiffs is inapplicable.

**12.** *See Stordahl v. Gov't Emp. Ins. Co.*, 564 P.2d 63, 68 (Alaska 1977); *Miller v. McManus*, 558 P.2d 891, 893 (Alaska 1977).

**13.** The trial court considered whether to set the settlement agreement aside or to conduct a trial on the merits for the sole purpose of deciding the attorney's fee issue. *See Clanton, supra.* During oral argument the trial court concluded in its second tentative ruling:
   "Where . . . an agreement is silent as to costs and attorney fees the court will treat the agreement as dispositive of the issue *sub silentio* and conclude that under Rule 82 it has no authority to grant costs and attorney fees."
In its final order the superior court found:
   "The agreement of settlement does not specify an award of costs or attorney fees to either party, nor does it provide that costs and attorney fees will not be awarded. This

42 U.S.C. § 1988

Fee awards are authorized by § 1988 to encourage public interest and civil rights litigation by private individuals.[14] Congress did not make fee awards mandatory, but, in order to effectuate a policy of vigorous enforcement, it specified a liberal standard to be used by the court in exercising its discretion.

It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by [§ 1988], if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). (footnote omitted)

S.Rep. No. 94–1101, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin. News, pp. 5908, 5912. *See Seals v. Quarterly County Court of Madison County, Tenn.,* 562 F.2d 390, 393 (6th Cir. 1977). Since there is little case law interpreting § 1988, the cases cited in its legislative history interpreting similar language in other federal attorney's fees statutes are instructive.

■■■ Like Rule 82, the awarding of fees under § 1988 is within the trial court's discretion. But that discretion is narrowly limited to insure the effectiveness of the underlying cause of action. *See Brown v. Culpepper,* 559 F.2d 274 (5th Cir. 1977); *Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320, 330–31 (1977); *U. S. Steel Corp. v. United States,* 519 F.2d 359 (3rd Cir. 1975); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 804 (4th Cir.), *cert. dismissed* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Clanton v. Allied Chemical Corp.,* 416 F.Supp. 39, 42 (E.D.Va.1976). Also, § 1988 is like Rule 82 in requiring a determination of the "prevailing party". It is well established that a party may be considered to have prevailed when he vindicates rights through a consent judgment or without formally obtaining relief.[15] However, this does not imply a requirement that attorney's fees must be awarded in all cases which end in settlement. Whether to award attorney's fees must be determined by a close scrutiny of all of the circumstances surrounding the settlement. *Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.D.C. 1976), *aff'd sub nom. Parker v. Califano, supra.* In the instant agreement, as in many settlement agreements, the reasons for the settlement are not clear without looking behind the express provisions.

Although the rule under § 1988 is that attorney's fees will be awarded to a prevailing plaintiff almost as a matter of course, the trial court still retains its discretion to

court's judgment and order of October 27, 1976 approving the terms of the agreement of settlement is likewise silent as to the question of costs and attorney fees."

Appellees contend they relied on the settlement agreement being all inclusive regarding their liability. Appellants argue that due to the rejection of any provision requiring each party to bear his own costs, attorney's fees remained in issue.

Since this analysis is not essential to the court's final decision we do not decide what conclusions, if any, are to be drawn from the silence in the consent decree. However, we think that the better practice would be for the parties to include a fee provision in the settlement agreement, or at least to reserve the question for judicial determination. We are not persuaded by *Prandini v. Nat'l Tea Co.,* 557 F.2d 1015, 1021 (3rd Cir. 1977), that inclusion of the attorney's fee issue in settlement negotiations necessarily creates a conflict of interest.

The trial court, in fulfilling its duty to see to the proper administration of justice, may properly exercise its responsibility by reviewing the basis for attorney's fees agreements.

14. *See* footnote 6, *supra.*

15. S.Rep. No. 94–1101, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin. News, pp. 5908, 5912–13, *citing Kopet v. Esquire Realty Co.,* 523 F.2d 1005 (2d Cir. 1975), and cases cited therein: *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970); *Richards v. Griffith Rubber Mills,* 300 F.Supp. 338 (D.Or.1969); *Thomas v. Honeybrook Mines, Inc.,* 428 F.2d 981 (3d Cir. 1970); *Aspira of New York, Inc. v. Board of Education of the City of New York,* 65 F.R.D. 541 (S.D.N.Y.1975).

*See generally,* Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849, 858–59 (1975).

determine whether the plaintiff is in fact the "prevailing party".[16] To avoid abuse of fee shifting provisions, various factors have been used by federal courts to make this determination. In addition to inquiring whether a party achieved substantial relief, the courts have considered the merits of the claim,[17] whether the plaintiffs rendered a substantial service or significantly advanced the public interest,[18] the necessity for the action,[19] and whether the suit served as a "catalyst" prompting compliance with the law by the defendant.[20] A showing by plaintiffs of a "mere chronology of events" may be insufficient to establish them as the prevailing parties, *Ackerman v. Board of Education of the City of New York,* 387 F.Supp. 76, 83 (S.D.N.Y.1974); but where the prosecution of the suit and the defendant's granting of requested relief are "causally as well as temporally related", an award of fees may be deemed appropriate. *Foster v. Boorstin,* 182 U.S.App.D.C. 342, 345, 561 F.2d 340, 343 (1977) (footnote omitted).

■ An essential requisite to an award of attorney's fees under § 1988 appears to be that the claim be meritorious.[21] *Clanton v. Allied Chemical Corporation,* 409 F.Supp. 282, 285 (E.D.Va.1976); *Downs v. Department of Public Welfare, Haverford State Hospital,* 65 F.R.D. 557 (E.D.Pa.1974); *Mental Patients Civil Liberties Project v. Hospital Staff Civil Rights Committee, Department of Public Welfare,* 444 F.Supp. 981, 986 (E.D.Pa.1977). *See Kahan v. Rosenstiel,* 424 F.2d 161, 167 (3rd Cir. 1970). A merit determination is important not only because it relates to the question whether plaintiff was the prevailing party, but also because it is needed to determine whether the public interest, in the context of this case the elimination of racial discrimination, has been advanced.[22]

■ Using the federal interpretations as guidelines, we cannot conclude in the case at bar that plaintiffs are the prevailing parties. They lost on the merits of the only issue which was litigated. The likelihood that they would have prevailed on the merits of the other claims if the case had gone to trial is uncertain. Evidence that the state had begun the implementation of a program and policy regarding rural secondary school programs before this lawsuit was initiated creates doubt concerning the importance of the lawsuit in bringing about the result. If the settlement agreement were to be set aside, it appears that the state's actions would remain the same. Likewise, it remains debatable whether constitutional rights have been furthered as a consequence of the settlement.

In the instant case the court was confronted with an unusual agreement and consent decree which required legislative and gubernatorial action. The final result was made contingent upon the passage of a bond issue by the voters, and the appellants

---

16. *See generally,* Attorney Fee Awards and the Public Interest Litigant, 65 Ky.L.J. 562, 569–70 (1976).

17. *E. g., Clanton v. Allied Chem. Corp.,* 409 F.Supp. 282, 284 (E.D.Va.1976).

18. *E. g., Zarcone v. Perry,* 438 F.Supp. 788, 791 (E.D.N.Y.1977), *Fort v. White,* 530 F.2d 1113, 1118–19 (2d Cir. 1976); *Incarcerated Men of Allen County v. Fair,* 507 F.2d 281, 285–86 (6th Cir. 1974).

19. *E. g., Aspira of N. Y., Inc. v. Bd. of Educ. of N. Y.,* 65 F.R.D. 541, 543 (S.D.N.Y.1975); *McCrary v. N. Y. Life Ins. Co.,* 84 F.2d 790, 795 (8th Cir. 1936).

20. *E. g., Parham v. Southwestern Bell Tel. Co., supra.*

21. The cases primarily relied on by the appellants are not to the contrary because they involve claims of obvious merit. Thus in *Incarcerated Men of Allen County v. Fair, supra,* and in *Parham v. Southwestern Bell Tel. Co., supra,* there was a partial adjudication in which the plaintiff was the prevailing party. In *Aspira of N. Y., Inc. v. Bd. of Educ. of the City of N. Y., supra,* a controlling decision of the Supreme Court of the United States favorable to the plaintiffs' position was announced during litigation, and in *Parker v. Matthews, supra,* the defendant admitted having discriminated during the course of the litigation.

22. It is the furtherance of the public interest which supplies the rationale for an award of attorney's fees under § 1988. *See Newman v. Piggie Park Enterprises, supra.*

reserved their right to return to court if the measure were to fail at the polls. We conclude that the record provides sufficient basis to warrant the trial court's denial of attorney's fees under § 1988.

We hold that in light of the characterization of the settlement agreement as a "political decision" and the indeterminate question of whether plaintiffs qualify as the prevailing party, the denial of attorney's fees was within the allowable discretion of the trial court under both the Alaska rules and § 1988.[23]

AFFIRMED.

MATTHEWS, Justice, concurring.

A consent judgment is a contract which the parties have chosen to make enforceable as a judgment.[1] I would hold that no Rule 82 attorney's fees may be awarded following a consent judgment, unless there is an agreement that they will be, because doing so changes the contract of the parties. Such a rule would ensure that each party gets what he bargains for, would eliminate uncertainty which could discourage settle-

ments, and would eliminate post-settlement litigation of the very controversy which the settlement was meant to resolve.[2]

I agree with that portion of the opinion concerning 42 U.S.C. § 1988.

RABINOWITZ, Justice, with whom BOOCHEVER, Chief Justice, joins, dissenting, in part.

I am in agreement with the disposition of the Civil Rule 82 facet of this appeal but cannot join in the majority's affirmance of the superior court's refusal to award attorney's fees pursuant to 42 U.S.C. § 1988. Based upon controlling federal criteria governing the award of attorney's fees in civil rights litigation, I am of the view that the superior court abused its discretion by denying any award of attorney's fees to appellants since the consent decree resolved public issues of significant magnitude.[1] I reach this conclusion for the following reasons.

In my view, the extensiveness of the relief awarded appellants providing for the elimination of alleged inequities in secondary education is impressive.[2] Also, I think

---

**23.** Because of our disposition of this case we do not reach any issue regarding the calculations of the trial court.

**1.** See Note, *The Consent Judgment as an Instrument of Compromise and Settlement,* 72 Harv.L.Rev. 1314, 1316 (1959).

**2.** See *Clanton v. Allied Chemical Corporation,* 409 F.Supp. 282, 416 F.Supp. 39 (E.D.Va.1976).

**1.** As summarized in appellants' brief, the consent decree requires:
—at least $20,000,000 in construction of local secondary schools, out of funds included in a 1976 bond issue, at sites in which members of the plaintiff class reside;
—steps to secure, through a 1978 bond issue, funds, (estimated at more than an additional $20,000,000) sufficient to complete significant secondary school construction in all 72 villages in which such construction would be needed to accommodate local programs, as well as such construction as may prove necessary at 36 smaller sites;
—programs to remediate the dropout problem, caused by the nonprovision of local schools, including programs to encourage dropouts to return to school and allowance for over-age residents of villages in which the plaintiffs reside to attend new local schools;

—provision in each community of a secondary school program, supervised throughout the school day by certificated teachers;
—a mechanism for local communities to choose, after a public hearing, to have no village secondary school or only a partial program, with a right of individual parents to obtain, where feasible, a local secondary program for their children notwithstanding the community's decision;
—local community participation in annual program planning and evaluation;
—minimum requirements for secondary boarding programs;
—allocation of adequate fiscal and staff resources by the defendants to ensure implementation of the remedial plan; and
—retention of jurisdiction until the remedial program has been substantially completed, with detailed progress reports to the court every four months. [footnote omitted]

**2.** In regard to the main issue in dispute, while appellee State Board of Education originally argued that local secondary schools, as a policy matter, were "ill conceived" and would have "potentially adverse educational effects," as a result of the consent decree, the Board no longer retains the discretion to deny local schools to appellants.

it clear that the institution of this litigation hastened the provision of local secondary schools in rural Alaska.[3] Although the appellee Board of Education argues that it had a policy since 1970 to provide small secondary schools in Native villages, and that this policy was frustrated only by a lack of construction funds, appellants correctly point out that implementation of this policy was unnecessarily slow prior to the entry of the consent decree:

> The consent decree lists 36 villages where, the parties estimate, local secondary [instruction] can be provided with only minimal construction, if any. As the Statement of Agreed Facts makes clear, local secondary instruction of students in these 36 small villages can be and could have been accomplished less expensively than instruction in the boarding system. Similarly, there are a number of other villages on Schedule C of the consent decree wherein it is possible, and doubtless has been possible for years, to implement local secondary programs—at least on an interim basis—in existing public facilities. But the defendants, incredibly enough, have never until the settlement of this lawsuit undertaken even the rudimentary step of conducting an inventory to determine in each village whether an

existing public facility could accommodate a local secondary program.[4]

Further, I do not believe that the circumstance of implementation of the consent decree being dependent upon passage of appropriate bonding constitutes a "special circumstance" which would justify a denial of attorney's fees. By upholding the denial of attorney's fees on the facts of the present case, the majority, in effect, would impose a requirement that plaintiffs in civil rights cases procure a stipulation in the settlement agreement as to liability of the defendant in order to collect attorney's fees as the "prevailing party."[5] Such a strict interpretation of the term "prevailing party" in 42 U.S.C. § 1988 is inconsistent with express congressional intent that section 1988 be applied to settlement cases,[6] and would substantially reduce the number of such suits which could be satisfactorily concluded by consent degree.

Given the narrow range of discretionary authority for award of attorney's fees under 42 U.S.C. § 1988, as interpreted by the federal courts, I would hold that appellants were the prevailing parties and would remand the matter to the superior court for determination of reasonable attorney's fees under 42 U.S.C. § 1988.

---

3. In this respect, this case differs substantially from *Ackerman v. Board of Educ.*, 387 F.Supp. 76 (S.D.N.Y.1976), in which the court held that an amendment to the Equal Employment Opportunity Law, rather than the plaintiff's lawsuit, prompted the Board's change in policy with regard to discriminatory child care leave rules. In the present case, the superior court discussed only the merits of plaintiff's legal claims and made no findings as to the impetus for the agreement to provide local secondary schools.

4. The quoted material is from appellants' brief before this court.

5. One district court actually has imposed a requirement that the plaintiff "either procure a stipulation from the defendants as to payment of counsel fees or affirmatively establish, either by uncontroverted affidavits or the introduction of evidence at trial that she has prevailed on the merits" before attorney's fees will be awarded in a settlement agreement. *Goodall v. Mason*, 419 F.Supp. 980 (E.D.Va.1976); *Clan-*

ton *v. Allied Chemical Corp.*, 409 F.Supp. 282 (E.D.Va.1976).

6. The Senate Report on the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, contains the following language:

> Moreover, for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief. *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2d Cir. 1975), and cases cited therein; *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421 (8th Cir. 1970); *Richards v. Griffith Rubber Mills*, 300 F.Supp. 338 (D.Or. 1969); *Thomas v. Honeybrook Mines, Inc.*, 428 F.2d 981 (3d Cir. 1970); *Aspira of New York, Inc. v. Board of Education of the City of New York*, 65 F.R.D. 541 (S.D.N.Y.1975).

S.Rep.No.94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Congressional and Administrative News, pp. 5912–13. *See also* H.Rep.No.94–1558, 94th Cong., 2d Sess. 7 (1976).