**Princess Ranola JOHNSON, etc., et al., Plaintiffs-Appellees,**

v.

**M. Browning COMBS, Superintendent, Grand Prairie Independent School District, et al., Defendants-Appellants.**

**No. 72–3030.**

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1972.

Rehearing and Rehearing En Banc Denied Feb. 8, 1973.

---

John Wright, William A. Barber, Jr., Grand Prairie, Tex., for defendants-appellants.

Edward B. Cloutman, III, Edward J. Polk, Andrew Konradi, James P. Finstrom, Dallas, Tex., for plaintiffs-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

On the merits, the judgment appealed from is due to be affirmed. Weaver v. Board of Public Education of Brevard County, Florida, 467 F.2d 473 (5th Cir. 1972).

The collateral question as to plaintiffs' entitlement to attorneys' fees below and on this appeal raises a novel issue. The law of the circuit prior to the passage of Section 718 of the Education Amendments Act of 1972 [1] made it clear that in school desegregation cases attorneys' fees would be awarded only if the school board was found to have acted in an "unreasonable and obdurately obstinate" manner. *See* Williams v. Kimbrough, 415 F.2d 874 (5th Cir. 1969), cert. denied 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 (1970) [citing Kemp v. Beasley, 352 F.2d 14 (8th Cir. 1965)], and Horton v. Lawrence County Board of Education, 449 F.2d 793 (5th Cir. 1971). The same rule has been applied in actions under 42 U.S.C.A. § 1982 (which, like *Williams* and *Horton,* were not governed by a statutory provision for attorneys' fees), Lee v. Southern Homesites Corporation, 429 F.2d 290 (5th Cir. 1969).

However, the enactment of Section 718 of the Education Amendments Act of 1972 requires that we answer three questions on this appeal: first, does the

---

1. Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this title or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs. 20 U.S.C. § 1617.

statute merely codify the existing "unreasonable and obdurately obstinate" standard, or does it set new parameters within which the district court must exercise its discretion; second, if the statute does create a new legal standard, to what degree should that standard be applied retroactively; and third, when is an order a "final order" within the meaning of the statute?

We note at the outset that Section 718 is similar, though not identical,[2] to the provision allowing attorneys' fees to the successful party in an action based on Title II of the 1964 Civil Rights Act.[3] In the leading case interpreting that provision, Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), the Supreme Court held that attorneys' fees must be awarded "unless special circumstances would render such an award unjust." Rejecting "good faith" as a defense, the Court reasoned that,

> If Congress' objective had been to authorize the assessment of attorneys' fees against defendants who make completely groundless contentions for purposes of delay, no new statutory provision would have been necessary, for it has long been held that a federal court may award counsel fees to a successful plaintiff where a defense has been maintained "in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 Moore's Federal Practice, 1352 (1966 ed.).

390 U.S. at 403 n. 4, 88 S.Ct. at 966 n. 4. Newman has been applied by this court in Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970), where we concluded in another Title II action that neither the fact that a non-frivolous controversy existed nor the fact that the defendants acted in good faith constituted the "special circumstances" contemplated by the Supreme Court. Thus, the standard applied under the statutory language in Title II actions diverged somewhat from the standard applied in school desegregation cases by this Court and other Circuit Courts which have considered the question. See Brewer v. School Board of City of Norfolk, Virginia, 456 F.2d 943, 949 (4th Cir.), cert. denied 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972). That Congress chose to structure Section 718 in language similar to that interpreted by the Supreme Court in Newman is. a strong factor indicating that the two statutes should be interpreted pari passu.

■ Moreover, in addition to the similarity of the language used in Section 718 and its Title II analogue, the two provisions share a common raison d'etre. The plaintiffs in school cases are "private attorneys general" vindicating national policy in the same sense as are plaintiffs in Title II actions. The enactment of both provisions was for the same purpose—"to encourage individuals injured by racial discrimination to seek judicial relief . . . ." See Newman, supra, 390 U.S. at 402, 88 S.Ct. at 966. We hold that if the court finds that the proceedings were necessary to bring about compliance, then Section 718 must be applied in accordance with the test enunciated in Newman, i. e., in the absence of special circumstances attorneys' fees are to be awarded.

■ We decline to apply Section 718 retroactively to the expenses incurred during the years of litigation prior to its enactment. This interpretation of the neutral language of the statute is compelled both by the long-established presumption against retrospective application in the absence of a clear legislative intent and the clear decisions of this Circuit governing the award of attorneys' fees in school cases. School deseg-

---

2. Section 718 requires a threshold finding by the trial court that the proceedings were necessary to enforce compliance.

3. In any action commenced pursuant to this subchapter, the court, in its discre-

tion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs, and the United States shall be liable for costs the same as a private person. 42 U.S.C. § 2000a–3(b).

regation litigation has produced precedents which have been somewhat less than clear and explicit. Even when plaintiff and defendant were in agreement about the end to be reached, the means and the timing which would accomplish the goal often remained in bitter dispute. There was a necessity that the demands of the aggrieved plaintiffs be harmonized with legitimate educational interests of the school authorities and the community as a whole in the smooth and uneventful transition to a unitary school system. Many school districts have been litigating in this field filled with fast changing precedents and guidelines for a number of years; to apply this statute retroactively would place a wholly unexpected and unwarranted burden on these districts who have done no more than litigate what they, in good faith, believed to be demands which exceeded the Constitution's demand.[4]

Under these circumstances, a retroactive application of this statute would punish school boards for good faith action in seeking the guidance of the courts to determine what was required of them. Furthermore, retroactive awards of attorneys' fees for these past years of litigation would not serve the purpose of encouraging future legal challenges of segregated school systems. The inconclusive legislative history of Section 718 furnishes no basis for inferring that Congress intended this provision to be given such a sweeping effect.

Thus, as to legal services awarded prior to July 1, 1972, the effective date of the Education Amendments Act of 1972, we hold that the award of attorneys' fees is to be governed by the standard enunciated by this court in *Williams* and *Horton*. Awards for legal services rendered on or after that date are governed by the statute.

The brief order of the trial court indicates that the single standard applied there was the one set out in Bradley v. School Board of City of Richmond, Virginia, 53 F.R.D. 28 (E.D.Va.1971). Without deciding whether the standard enunciated in *Bradley* is consistent with Section 718, we rule that *Bradley*, at least insofar as it holds that full and appropriate relief in school desegregation cases must include the award of expenses of litigation, 53 F.R.D. at 41, is inconsistent with the standard of this circuit applicable to legal services rendered prior to the effective date of the statute. Since the record indicates that some part of the legal services in this case may have been rendered prior to that date, we vacate the award of attorneys' fees and remand to the district court for further proceedings in accord herewith.

 Section 718 expressly allows attorneys' fee awards only upon "the entry of a final order." The most suitable test for such finality exists in the body of law which has been developed in determining appealability under 28 U.S.C. A. § 1291. In general, this means a judgment or order which ends the litigation on the merits and comprehends only the execution of the court's decree. *See* C. Wright, Federal Courts § 101 (2d ed. 1970). Since most school cases involve relief of an injunctive nature which must prove its efficacy over a period of time, it is obvious that many significant and appealable decrees will occur in the course of litigation which should not qualify as final in the sense of determining the issues in controversy. The ultimate approach to finality must be an individual and pragmatic one. Such a matter should be committed to the determination of the trial court.

 For the district court's guidance at the appropriate time, we now hold that plaintiffs are entitled to a reasonable attorneys' fee for prosecuting this present appeal, in the amount of 1,250 dollars. *See* Meeks v. State Farm Mut.

---

4. Of course if the litigation could be characterized as unreasonable and obdurately obstinate, then by the same reasoning as advanced in *Newman, supra,* Section 718 would be surplusage under the existing rule of *Williams* and *Horton*.

88

Ins. Co., 460 F.2d 776 (5th Cir. 1972);
Campbell v. Green, 112 F.2d 143 (5th
Cir. 1940).

Affirmed in part, vacated in part and
remanded.