Shirley GAINES, et al., Plaintiffs,

v.

DOUGHERTY COUNTY BOARD OF
EDUCATION, et al., Defendants.

Civ. A. No. 764–ALB.

United States District Court,
M.D. Georgia,
Albany Division.

May 11, 1984.

Herbert Phipps, C.B. King, Jr., Albany, Ga., for plaintiffs.

Jesse W. Walters, P.Z. Geer, Albany, Ga., Jack Greenberg and Charles Ralston, New York City, for defendants.

OWENS, Chief Judge:

In this school desegregation lawsuit which began April 5, 1963, and has continued to the present time, plaintiffs' attorneys have moved the court for an award of attorney's fees for services rendered from April 5, 1963, to date. Responses and affidavits having been received from both the plaintiffs and defendants and an evidentiary hearing having been held, this constitutes the court's findings of fact and conclusions of law. The facts relevant to plaintiffs' current application for fees are as follows.[1]

Plaintiffs' first motion for attorneys' fees was made in July of 1971. MOTION, filed July 2, 1971. At that time this court[2] denied plaintiffs' request for fees as well as their request for an order appointing an expert in education and request that the Dougherty County School Board's revised desegregation plan not be approved. MEMORANDUM OPINION AND ORDER, filed August 4, 1971. More specifically, in regard to attorneys' fees, this court found as follows: "The Court also denies the motion of the Plaintiffs that the Defendants be ordered to pay the Plaintiffs' expenses and attorneys' (sic) fees because the Defendants have in good faith and promptly undertaken to fully comply with the orders and judgments made by the Court in this case." MEMORANDUM OPINION AND ORDER at p. 10. The plaintiffs appealed the court's decision denying all three requests, NOTICE OF APPEAL, filed August 5, 1971, and the United

---

1. The decisions in this case dating back to 1963 are reported as follows and should be read in conjunction with the decision made here for a clear understanding of the history of this litigation: *Gaines v. Dougherty County Board of Education,* 222 F.Supp. 166 (M.D.Ga.1963); 329 F.2d 823 (5th Cir.1964); 334 F.2d 983 (5th Cir.1964); 392 F.2d 669 (5th Cir.1968); 442 F.2d 1344 (5th Cir.1971); 446 F.2d 907 (5th Cir.1971); 465 F.2d 363 (5th Cir.1972); 489 F.Supp. 778 (M.D.Ga. 1980).

2. Up until 1975, this case was handled by the United States District Court Judge for the Middle District of Georgia, Judge J. Robert Elliott.

States Court of Appeals remanded the case to this court for further action, but only in regard to the student assignment plan prepared by the Department of Health, Education and Welfare which had not been previously approved by the Board. Because the case was remanded only as to that one issue, this court's decision regarding attorneys' fees and the appointment of an expert in education was thereby impliedly affirmed. *Gaines v. Dougherty County Board of Education,* 446 F.2d 907 (5th Cir.1971).[3]

Thereafter, the plaintiffs filed a motion objection to the HEW plan and again requesting this court to appoint an educational expert and award costs and attorneys' fees. MOTION, filed August 31, 1971. Plaintiffs motion was overruled that same day; subsequently, seemingly in accordance with the direction which had been given by the Court of Appeals, this court approved the HEW plan with certain modifications. In that regard, this court stated: "With the modifications set forth above, the Court hereby approves the student assignment plan submitted by the Department of Health, Education and Welfare and hereby directs the Dougherty County Board of Education to implement the same for the school year 1971–1972. Further, as required by the mandate of the Court of Appeals, this order is to be considered a Final Judgment and this Court does hereby judicially declare the Dougherty County School System to be a Unitary System." MEMORANDUM OPINION AND ORDER, filed September 3, 1971, at p. 12.

The plaintiffs again appealed and once more specifically requested that this court be ordered to award attorneys' fees. Plaintiffs urged that the defendant Board had acted unreasonably and obstinately in not following the Court of Appeals' previous mandate to adopt an acceptable desegregation plan. NOTICE OF APPEAL, filed September 7, 1971. This court's decision was reversed and the case was remanded for submission of yet another desegregation plan. *Gaines v. Dougherty County Board of Education,* 465 F.2d 363 (5th Cir.1972). No mention was made of plaintiffs' request for attorneys' fees; thus, this court's decision in that regard was again impliedly affirmed.

Plaintiffs then filed a MOTION FOR FURTHER RELIEF on September 7, 1972, which included a request for fees; however, no further request for fees was made until 1976 at which time this court awarded $100.00; ORDER, filed October 27, 1976, for services rendered in connection with plaintiffs' motion of February 5, 1975, for class relief.

■ The application for attorneys' fees is made pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988, and the Education Amendments Act of 1972, 20 U.S.C.A. § 1617. The Civil Rights Attorney's Fees Awards Act, effective as of October 19, 1976, provides that federal courts may award attorneys' fees as a part of costs to prevailing parties in suits brought under 42 U.S.C.A. § 1983 and certain other statutes. *Kelley v. Metropolitan City Board of Education of Nashville,* 558 F.Supp. 468, 470 (M.D. Tenn.1983). The Education Amendments Act of 1972, effective as of July 1, 1972, authorizes a federal court to award, at its discretion, reasonable attorneys' fees in a school desegregation case where a final order has been entered, the litigation was necessary to bring about compliance of a

---

**3.** At this time, an award of attorneys' fees was appropriate only if it could be shown that a school board had acted obdurately and obstinately in failing to adopt an acceptable desegregation plan. *See, Johnson v. Combs,* 471 F.2d 84 (5th Cir.1972), *citing Williams v. Kimbrough,* 415 F.2d 874 (5th Cir.1969), *cert. denied,* 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 (1970) and *Horton v. Lawrence County Board of Education,* 449 F.2d 793 (5th Cir.1971). It is not surprising that the Board here was found not to have acted in that manner in light of the constantly changing precedents during this period of litigation, *see, Johnson, supra,* and the different directions which had already been given in this case as a result. Indeed, there had already been three appeals in this case, and a different direction regarding desegregation was given as a result of each. *Gaines v. Dougherty County Board of Education,* 329 F.2d 823 (5th Cir.1964); 334 F.2d 983 (5th Cir.1964); and 392 F.2d 669 (5th Cir.1968).

school district, and the party receiving the award was the prevailing party. *Tasby v. Estes,* 498 F.Supp. 1130, 1132 (N.D.Tex. 1980).

 Under either of those provisions an award of attorneys' fees to plaintiffs is appropriate.[4] This suit worked as the catalyst for the desegregation process of the Dougherty County school system; plaintiffs are thus without a doubt prevailing parties entitled to be compensated in some amount. The primary question in this case concerns the date from which the awardable fee is to be calculated. Under some circumstances plaintiffs may be awarded fees for work done even prior to the effective dates of those acts. *See, Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). After the date for determining fees is set, the next question to be addressed is what constitutes a reasonable fee in this case.

## FROM WHAT DATE SHOULD PLAINTIFFS' AWARD OF ATTORNEYS' FEES BE CALCULATED?

 In a MEMORANDUM TO COUNSEL, dated April 21, 1983, the parties were apprised of the court's concern regarding the plaintiffs' request to be awarded a fee for services rendered all the way back to the commencement of this suit in 1963. In response to that memorandum plaintiffs urged, in sum, that there was never a final order denying counsel fees in this matter and that as a result the issue of counsel fees back to the commencement of this litigation is now open and ripe for decision. This court disagrees.

A retroactive award of attorneys' fees for services rendered all the way back to 1963 would be unfair to the defendants in this case because plaintiffs' previous requests for attorneys' fees were denied; appeals were taken and the issue settled by the 1971 and 1972 decisions discussed herein. As stated in *Northcross v. Board of Education of Memphis City Schools:*

> This is not to say that a retroactive award of attorney's fees must be made in all school desegregation cases. Certain interim aspects of the case may have been subject to a final order settling the issue of attorney's fees to that point, rendering the reopening of long-settled aspects of the case unfair.

611 F.2d 624 at 635 (6th Cir.1979).

This court's September, 1971, decision constituted a final order as to an interim aspect of this case, *i.e.,* the adoption of a modified version of the HEW plan as seemingly mandated by the Court of Appeals, and settled the issue of attorneys' fees to that point. Although this court's action in adopting a modified version of the HEW plan was ultimately reversed by the Court of Appeals, it is reasonable to assume that this court's decision to deny plaintiffs' request for attorneys' fees was affirmed where that issue had been specifically appealed and where an award would have been appropriate if merited because of the final nature of this court's decision which was the subject of the appeal. If this court were to consider awarding fees for services rendered prior to its decision of September 3, 1971, a "long-settled" aspect of this case would be reopened.

As to the finality of this court's order of September 3, 1971, there is no set formula for determining what constitutes a final order, especially in a desegregation case such as this one. As noted in *Johnson v. Combs:*

> Section 718 expressly allows attorneys' fees awards only upon "the entry of a final order." The most suitable test for such finality exists in the body of law which has been developed in determining appealability under 28 U.S.C.A. § 1291. In general, this means a judgment or

---

**4.** As a practical matter it makes no difference which Act is applied in awarding fees. *See, Northcross v. Board of Education of Memphis City Schools,* wherein it was noted, "[w]e see no substantial differences between the provisions or purposes of that Act (Civil Rights Attorney's Fees Awards Act) and the Emergency School Aid Act...." 611 F.2d 624, 632 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

order which ends the litigation on the merits and comprehends only the execution of the court's decree. *See* C. Wright, Federal Courts § 101 (2d ed. 1970).

Since most school cases involve relief of an injunctive nature which must prove its efficacy over a period of time, it is obvious that many significant and appealable decrees will occur in the course of litigation which should not qualify as final in the sense of determining the issues in controversy. *The ultimate approach to finality must be an individual and pragmatic one. Such a matter should be committed to the determination of the trial court.*

471 F.2d 84 at 87 (5th Cir.1973) (emphasis added).

Looking more specifically at this case, the August, 1971, remand by the Court of Appeals was "... with the direction that the district court at once issue a rule nisi to defendants as to why the student assignment plan now on file prepared by the Department of Health, Education and Welfare should not be made the student assignment plan for school system for the 71–72 school term." 446 F.2d at 907.

As previously noted, this court thereafter again denied plaintiffs' motion for attorneys' fees and in compliance with the Court of Appeals' mandate approved a modified version of the HEW plan stating in reference to the finality thereof that "... as required by the mandate of the Court of Appeals, this order is to be considered a Final Judgment and this Court does hereby judicially declare the Dougherty County School System to be a Unitary System." MEMORANDUM OPINION AND ORDER, filed September 3, 1971, at p. 12. At this point, all that remained to be done was to execute the decree. *See, Johnson, supra.*

The final nature of that decision was also recognized by the Court of Appeals in that the decision was reversed as well as remanded for further action. *Cf. Tasby v. Estes*, 498 F.Supp. 1130 (N.D.Tex.1980) (Where issues taken upon appeal had not been finally decided by any court and it was only after further fact findings had been entered and changes in student assignment plan made if necessary, and upheld or reversed if appealed, could it be said that a final order had been entered, a request for attorneys' fees would be held under advisement.)

The parties' actions subsequent to the 1972 decision by the Court of Appeals also evidence that there was a break in the litigation at that point. Although plaintiffs filed a MOTION FOR FURTHER RELIEF in September, 1972, no meaningful steps were taken towards obtaining the desired result until the plaintiffs filed a proposed plan for the creation of a unitary school system in January, 1978. Thereafter, this court appointed three experts to make recommendations as to a desegregation plan. There was thus a lapse of approximately six years during which the schools continued to operate under the HEW plan without any meaningful challenge being made.

As evidenced by the language therein, the Court of Appeals' action in 1972 as to that decision, and the parties' actions thereafter, this court's decision of September 3, 1971, was final in nature. While it would have been appropriate for the Court of Appeals to order that an award of attorneys' fees be made as a part of its 1972 decision, no mention of attorneys' fees was made as a part of the 1972 appellate decision; this court's denial of attorneys' fees was thus impliedly affirmed. The issue of attorneys' fees for services theretofore rendered was conclusively decided as of the Court of Appeals' decision in 1972; it would be unfair to the defendants to reopen that long-settled aspect of this case. *Northcross, supra.* Alternatively, even if the September, 1971, decision was not a final order in the strictest sense, the events described herein constitute special circumstances which would make an award for services rendered prior to this court's 1971 decision manifestly unjust. *See, Kelley v. Metropolitan City Board of Education of Nashville*, 558 F.Supp. 471 (M.D.Tenn. 1983).

Accordingly, because it would be unfair to calculate plaintiffs' award from a date prior to the 1971 decision, the court will consider only services rendered since September 3, 1971, except to the extent that the total time and labor required to effectuate the desired result will be considered in determining a reasonable hourly rate of compensation in accordance with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

## WHAT IS THE AMOUNT OF A REASONABLE FEE?

Having now determined that plaintiffs are prevailing parties and are entitled to an award of attorneys' fees for services rendered since September 3, 1971, the next question to be addressed is what amount of fees is reasonable in this case. *See, Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

To answer that question, the court must initially determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley, supra.* For that purpose, Mr. King's request for compensation at the rate of $150.00/hour for 349.20 hours, which covers a period of time from September 3, 1971 through October 3, 1983, Mr. Ralston's request to be compensated at a $165.00 hourly rate for 76.30 hours (covering the same period of time),[5] and Mr. Phipps' request for compensation at the rate of $100.00/hour for 343.5 hours (covering 1972 through 1981), will be considered in light of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), as required by law. *See, Marable v. Walker*, 704 F.2d 1219 (11th Cir.1983). Although the number of compensable hours claimed by an attorney cannot provide the sole basis upon which a fee award is made, the time and labor required in a case is a good starting point

for determining what amount of fees is reasonable. *Johnson, supra.*

### 1. Time and Labor Required

As noted, this litigation has progressed over a 20-year period. In light of that fact, based on this United States District Judge's knowledge, experience and expertise of the time required to complete similar activities, the number of compensable hours claimed by plaintiffs' counsel is relatively low as compared to the more than adequate representation provided over such a long period of time. For example, the number of hours for which lead counsel, Mr. King, seeks compensation constitutes only approximately eight 40-hour work weeks.

Even so, defendants urge that much of the time spent by plaintiffs' counsel was excessive in part because duplicative. Duplicative efforts are not compensable only when unreasonable. *Daniels v. Zant*, 712 F.2d 1417 (11th Cir.1983). " 'An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.' " *Daniels, supra*, at p. 2, *quoting, Johnson v. University College of the University of Alabama in Birmingham*, 706 F.2d 1205 at 1208 (11th Cir.1983).

Defendants' Exhibit A to their MEMORANDUM IN OPPOSITION TO APPLICATION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS convincingly sets forth the time which they urge is duplicative. Based on Exhibit A, there does appear to be some duplication of effort, especially on the part of Mr. King and Mr. Phipps. Much of the time claimed by Mr. Phipps is exactly the same and for the exact same services as that claimed by Mr. King. To contradict the apparent duplication both Mr. King and Mr. Ralston sub-

---

**5.** At the outset it should be noted that "[t]he statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, — U.S. —, —,

104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (footnote omitted). Therefore, here, a reasonable fee for Mr. Ralston will be calculated according to the prevailing market rate even though he was not practicing with a private law firm at the time he represented plaintiffs in this case.

mitted affidavits which evidence that duplicative items were eliminated where possible and that those hours which appear duplicative but which were not eliminated were necessary and reasonable.

An accurate assessment of whether certain time spent by plaintiffs' counsel was unreasonably duplicative cannot be made because the descriptions of services rendered which have been submitted are not detailed enough to enable the court to determine with certainty the number of hours reasonably expended; further, the affidavits submitted are general in nature and do not provide specific details—at least as to all the apparent duplicative hours—which would enable the court to make a reasonableness determination on that basis. Part of the explained reason for this inadequacy is that plaintiffs' counsel found it necessary to reconstruct some of the time spent during certain years by reviewing their own briefs, documents and other records. Although plaintiffs' counsel will not be penalized for the necessary reconstruction alone, *see, Harkless v. Sweeny Independent School District,* 608 F.2d 594 (5th Cir.1979), it should be emphasized that plaintiffs have the burden of establishing their entitlement to an award, and as a result should have maintained time records in a manner that would enable this court to identify distinct claims. *Hensley v. Eckerhart, supra.*

■ In fact, the inadequate time records of all three of plaintiffs' attorneys makes it impossible to make a considered decision as to the reasonableness of the overall hours claimed and not just as to that time alleged to be duplicative. For example, some of the conferences held with class members could be considered as clerical work, investigation, or compilation of facts such as that determined to be compensable at a lesser rate by the court in *Johnson.* 488 F.2d 714, 717. As a result of plaintiffs' counsel's failure to provide records sufficient to enable this court to make a considered determination as to the number of hours reasonably expended—because duplicative or otherwise—the overall award to each will be reduced somewhat. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart,* 461 U.S. at ——, 103 S.Ct. at 1939, 76 L.Ed.2d at 50 (1983). The described inadequacy makes it impossible to delete those hours which appear to be duplicative or for services not required to be performed by an attorney; therefore, plaintiffs' award will be reduced by lowering the hourly rate assigned to each of plaintiffs' attorneys.

*2. Novelty and Difficulty of the Questions*

Although the issues presented in this case were novel and difficult in the sense that society as a whole was experiencing a drastic and, at times, painful change, Mr. King, Mr. Ralston, and Mr. Phipps were each experienced in the area of civil rights and more specifically in school desegregation cases. For them this has been neither a novel or difficult case.

*3. The Skill Requisite to Perform the Legal Service Properly*

As noted, plaintiffs' representation was more than adequate.

*4. The Preclusion of Other Employment by the Attorney(s) Due to Acceptance of the Case*

As was noted by plaintiffs in their MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, an adequate preparation of this case would necessarily preclude other employment but only to the extent that time devoted to this case prevented attention to other cases.

*5. The Customary Fee*

■ In determining what constitutes a reasonable hourly rate in this case, the court must consider not only the fees charged by plaintiffs' counsel but also whether the rates requested by plaintiffs' attorneys are consistent with those prevailing in the Albany, Georgia area for similar services by lawyers of reasonably comparable skill, experience and reputation. "A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Blum v. Stenson,* —— U.S.

——, ——, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).

Based on the testimony given at the evidentiary hearing held in this matter regarding fees charged by lawyers of similar skill, experience and reputation to plaintiffs' attorneys, the customary hourly fee for the period 1963–1970 ranged from $30.00–$40.00. Also based on the testimony presented at the evidentiary hearing and on a supplementary affidavit submitted thereafter, the customary rate for the period of time covering 1970–1983 ranged from $50.00–$70.00; more specifically, during 1978, based on confidential affidavits submitted by lawyers from seven Albany firms, the rate charged was in the $50.00–$60.00 range. These figures, incidentally, are also consistent with a recent study done by this court regarding the hourly rate charged by attorneys in the South during the years involved in this case and the rate required to be charged to cover overhead as a product of the attorneys' income. Further, the figures discussed here are the rates charged generally by attorneys who charge by the hour. These rates do not reflect an occasionally quoted higher or lower rate found to be attributable to the existence of a flat fee or contingency fee client.

### 6. *Whether the Fee is Fixed or Contingent*

This is a contingency fee case in the sense that plaintiffs had to prevail in order to be entitled to the fee award made here. However, as noted at the evidentiary hearing, plaintiffs did receive some funds from the NAACP Legal Defense and Educational Fund, Inc. and it is assumed that plaintiffs' counsel will reimburse that organization for the amounts advanced.

### 7. *Time Limitations Imposed by the Client or the Circumstances*

The time limitations in this case consisted of the regularly imposed court time limits and the time limits naturally imposed when considering how various plans would affect the planned school year. No evidence has been presented here which indicates that any extraordinary time constraints precluded plaintiffs' attorneys from other work.

### 8. *The Amount Involved and the Results Obtained*

As noted previously, the Dougherty County School System was transformed from a segregated to a desegregated system through the efforts of plaintiffs in bringing and maintaining this suit and through the efforts of the defendant school board—once it was acknowledged that a change was constitutionally mandated—in attempting to comply with the constantly changing court-imposed standards being applied in this case. The circumstances surrounding desegregation were described particularly well by the court in *Johnson v. Combs,* in deciding whether the Education Amendments Act should be applied retroactively:

We decline to apply Section 718 retroactively to the expenses incurred during the years of litigation prior to its enactment. This interpretation of the neutral language of the statute is compelled both by the long-established presumption against retrospective application in the absence of a clear legislative intent and the clear decisions of this Circuit governing the award of attorneys' fees in school cases. School desegregation litigation has produced precedents which have been somewhat less than clear and explicit. Even when plaintiff and defendant were in agreement about the end to be reached, the means and the timing which would accomplish the goal often remained in bitter dispute. There was a necessity that the demands of the aggrieved plaintiffs be harmonized with legitimate educational interests of the school authorities and the community as a whole in the smooth and uneventful transition to a unitary school system. Many school districts have been litigating in this field filled with fast changing precedents and guidelines for a number of years; to apply this statute retroactively would place a wholly unexpected and unwarranted burden on these districts who have done no more than litigate what they, in good faith, believed to be demands which exceeded the Constitution's demand.

471 F.2d 84 at 86 and 87 (5th Cir.1973) (footnote omitted).

Based on the same rationale used by the court in *Johnson* in refusing to apply the Education Amendments Act retroactively, this court finds that the success in transforming the Dougherty County School System into a unitary school system is at least partially attributable to the efforts of the school board. As a result, the hourly rate awarded here will not be increased or decreased because of the degree of success achieved.

9. *The Experience, Repuration and Ability of the Attorneys*

The experience, reputation and ability of Mr. King, Mr. Ralston and Mr. Phipps as reflected by their affidavits and this court's opportunity to observe those attorneys in this and other cases has been considered in determining what constitutes a reasonable fee in this case.

10. *The "Undesireability" of the Case*

All three plaintiffs' attorneys actively practice in the area of civil rights; their representation in this case had no harmful economic impact on their practices. If anything, this case was beneficial to each of their practices.

11. *The Nature and Length of the Professional Relationship with the Client*

The nature and length of plaintiffs' relationship with Mr. King, Mr. Phipps and Mr. Ralston as established by those attorneys' affidavits has been considered.

12. *Awards in Similar Cases*

This court has considered awards made in this and other circuits in similar cases. An average award in this court's experience with civil rights cases extending over the period of time involved here falls within the $50.00-$65.00 per hour range.

Having considered the *Johnson* factors, the court concludes that a reasonable rate of compensation for Mr. King, who has acted as lead counsel in this case since 1963, is $65.00/hour for 349.20 hours which constitutes an award of $22,698.00. For

Mr. Ralston, who was primarily responsible for the appellate work, a $75.00 hourly rate of compensation for 76.30 hours or $5,722.50 is a reasonable award. Mr. Phipps is entitled to be compensated at a $50.00/hour rate for 343.5 hours which constitutes an award of $17,175.00. The total award to plaintiffs for attorneys' fees is thus $45,595.50. As is consistent with *Blum v. Stenson, supra,* no further adjustment need be made for factors such as the level of success and the novelty or complexity of the issues, as a result of this court's considering those factors as a part of its overall determination made in accordance with *Johnson* of what constitutes a reasonable fee in this case. The delay plaintiffs have experienced in receiving the award made here is reflected in the hourly rates discussed. Finally, all of plaintiffs' costs and expenses since September 3, 1971,[6] or $5,140.84, appear to be reasonable and necessary and are thus also made a part of this award.

THEREFORE, IT IS HEREBY ORDERED that the defendants pay $50,736.34 to the clerk of this court to be distributed thereafter in accordance herewith.

---

**6.** Plaintiffs' request for costs and expenses is considered only since September 3, 1971, for the same reason that plaintiffs' attorneys' fees were calculated from that date.