ROGERS, Circuit Judge,
concurring in part, dissenting in part, and concurring in judgment:
I write separately on the question whether the court may properly defer to the Federal Aviation Administration’s position on appeal that the word “prudent” has different meanings in section 4(f) of the Department of Transportation Act of 1966 (“DOT Act”) and section 509(b)(5) of the Airport and Airway Improvement Act of 1982 (“AAIA,” codified at 49 U.S.C. § 47106(c)(1)(B)). The analysis adopted by the majority in deferring to a post hoc litigating position takes a strange turn and is flawed. In section 4(f), Congress used the word “prudent” in an environmental context involving transportation projects. The Supreme Court construed the word in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Thereafter Congress used the same word in the AAIA in a broader environmental context involving transportation projects. The FAA formally announced in Order 5050.4B that it interpreted “prudent” in the two statutes to mean the same thing, and this court previously understood the two statutes the same way. Nonetheless, the majority con- *592 eludes that because the AAIA protects more of the environment than section 4(f), there was a “gap” between the statutes affording the FAA “discretion,” Maj. Op. at 587, to adopt an interpretation of “prudent” that is “distinctly laxer,” Maj. Op. at 586, than the Supreme Court’s even though this interpretation can be found only in the FAA’s appellate brief, Maj. Op. at 586-87. Precisely why a post hoc statement of counsel for the FAA is entitled to deference the majority does not say other than to note that counsel’s post-hoc statement is “not new.” Maj. Op. at 586-87. The majority also draws on a distinction between public and private property that another court adopted in a case where facts belied the validity of the distinction.
It is unnecessary in concurring in the judgment to decide whether the FAA’s Order 5050.4B is consistent with the Supreme Court’s analysis of the word “prudent” in section 4(f). Suffice it to say, because the record demonstrates that the FAA acted consistently with its regulatory interpretation of “prudent” in Order 5050.4B in determining whether Alternative Cl, favored by petitioners, met the transportation goals of the Fort Lauder-dale-Hollywood International Airport expansion, the FAA’s determination that Alternative Cl is imprudent was not arbitrary or capricious or contrary to law. See Fed. Aviation Admin., Record of Decision, The Development and Expansion of Runway 9R/27L and Other associated Airport Projects at Fort LauderdaleHollywood International Airport, Bro-ward County, Florida 32-33 (2008) (“Record of Decision”). Accordingly, except as discussed below, I concur.
I.
Section 4(f) of the DOT Act of 1966 provides that the Secretary of Transportation may approve a transportation program or project
requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance ... only if—
(1) there is no prudent and feasible alternative to using that land; and
(2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.
49 U.S.C. § 303(c) (emphasis added).
In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court addressed the meaning of “prudent” in section 4(f). It held that to be imprudent and thereby justify the destruction of parkland, the alternative to using a section 4(f)-protected resource must present “unique” and “truly unusual” problems reaching “extraordinary magnitudes.” 401 U.S. at 413, 91 S.Ct. 814.
In 1982, Congress enacted the AAIA, Pub.L. No. 97-248, 96 Stat. 324, 684 (1982). Section 509(b)(5) of the AAIA, now codified at 49 U.S.C. § 47106(c)(1)(B), provides that the Secretary of Transportation may authorize a major airport development project that
is found to have a significant adverse effect on natural resources, including fish and wildlife, natural, scenic, and recreation assets, water and air quality, or another factor affecting the environment, only after finding [1] that no possible and prudent alternative to the project exists and [2] that every reasonable step has been taken to minimize the adverse effect.
49 U.S.C. § 47106(c)(1)(B) (emphasis added). A recodification in 1994, see Pub.L. No. 103-272, 108 Stat. 745, 1255, changed *593 the original “feasible and prudent” to the current “possible and prudent,” 49 U.S.C. § 47106(c)(1)(B), but “no substantive change in the law” was intended, H.R. REP. No. 103-180, at 5 (1993), reprinted in 1994 U.S.C.C.A.N. 818; see S. REP. No. 103-265, at 3 (1994).
The Supreme Court has long considered Congress to intend similar or identical language to have the same meaning in two different statutes when “the two provisions share a common raison d’etre.” Northcross v. Bd. of Educ. of Memphis City Sch., 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (quoting Johnson v. Combs, 471 F.2d 84, 86 (5th Cir.1972)). Thus, as the Supreme Court held in Smith v. City of Jackson, Miss., 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), “when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.” 544 U.S. at 233, 125 S.Ct. 1536 (citing Northcross); see Nat’l Treasury Emps. Union v. Chertoff, 452 F.3d 839, 857 (D.C.Cir.2006) (citing Smith). Further, “when ‘judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its ... judicial interpretations as well.’ ” Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) (quoting Bragdon v. Abbott, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)) (modification in original).
Applying the presumption, it is clear Congress intended “prudent” in section 47106(c)(1)(B) (the AAIA) to mean the same thing as in section 4(f) and as construed by the Supreme Court in Overton Park. Contextually, the term is used identically in the two statutes: both provisions limit the Secretary of Transportation’s power to approve new transportation projects when they would “use” (as in section 4(f)) or “cause significant adverse effects” (as in section 47106(c)(1)(B)) to the protected environmental resources. In the years between enactment of section 4(f) and the AAIA’s enactment, the Supreme Court defined “prudent” as used in section 4(f) in Over-ton Park. It is difficult to imagine that Congress did not have in mind this settled understanding of the meaning of “prudent” when it chose to employ the same word (and the same concomitant requirement, feasibility) in a virtually identical context for the same purpose of protecting environmental resources. Congress gave no indication in the AAIA that it intended a different meaning, which it easily could have done, much less that it intended to water down the high hurdle that the Supreme Court identified in Overton Park.
The FAA, which, as relevant here, has been delegated authority for carrying out section 4(f) and section 47106(c)(1)(B), reached the same conclusion in formally adopting the interpretation that the word “prudent” has the same meaning in both statutes. In Order 5050.4B, the FAA’s regulatory announcement of internal policies published upon congressional direction for notice and comment in the Federal Register, see Maj. Op. at 586, the FAA stated that “prudent” as used in the AAIA is “defined relative to section 4(f).” Order 5050.4B, ¶ 1007.e(4)(b) (Apr. 26, 2006), available at http://www.faa.gov/airports/ resources/publications/orders/ environmental_5050_4/; see Notice of Publication of the Preamble to Order 5050AB, 71 Fed.Reg. 29,014 (May 18, 2006) (“2006 Notice ”); Notice of Availability and Request for Comments on Draft Order 5050AB, 69 Fed.Reg. 75,374 (Dec. 16,2004). *594 The “ordinary or natural meaning,” Bailey v. United States, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (internal quotation marks omitted), of the noun “relative” is “a thing having a relation to or connection with or necessary dependence on another thing,” Merriam-Webster’s Collegiate Dictionary 987 (10th ed. 1993) (“Merriam”). Order 5050.4B cross-references its own paragraph 1007.e(5)(a) for “more information” about the meaning of “prudent” in section 47106(c)(1)(B), and that paragraph lists seven factors for the FAA to weigh in considering “[ajirport actions resulting in use of section 4(f)-protected resources.” The preamble to Order 5050.4B states, moreover, that the “FAA ... believes [this definition of ‘prudent’] is appropriate for FAA actions under 49 U.S.C. § 47106(c)(1)(B) as well as Section 4(f).” 2006 Notice, 71 Fed.Reg. at 29,019. Viewed contextually, the “necessary dependence” meaning of the word “relative” applies.
Ordinarily, were deference due to the FAA’s interpretation, whether under Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), or Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), see Maj. Op. at 586, the FAA has already spoken by regulation on the precise question in a manner consistent with the presumption that Congress used the word “prudent” to mean the same thing in the AAIA and section 4(f), as interpreted by the Supreme Court in Overton Park. See Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Before this court, although not contesting that the FAA is bound by its interpretation in Order 5050.4B, see United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), counsel representing the FAA states that FAA Order 5050.4B provides that the definition of “prudent” in section 4(f) is “useful” to defining the term in section 47106(c)(1)(B) but “does not suggest that ‘prudent’ has the same meaning under both statutes.” Respd.’s Br. 42. This means, counsel tells the court, that additional factors may be considered in the section 47106(c)(1)(B) “prudent” analysis that may not be considered in the section 4(f) analysis. See id. at 42-44. Counsel further maintains that this litigating interpretation merits deference under Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). See Respd.’s Br. 42. Yet the Order, in fact, uses the phrase “very useful” (emphasis added) and in the context of the surrounding language, and considering also the unequivocal statement in the preamble, the phrase “very useful” in Order 5050.4B simply explains that the definition contained in paragraph 1007.-e(5)(a) applies to section 47106(c)(1)(B) notwithstanding that paragraph’s references to section 4(f). Nothing in the “very useful” phrase indicates that the meaning of “prudent” differs under the two statutes, and the FAA has not identified a separate list of factors for consideration under the AAIA. Under the circumstances, unlike in Auer, 519 U.S. at 462, 117 S.Ct. 905, there is “reason to suspect” FAA’s post hoc litigating position does not reflect the agency’s “fair and considered judgment on the matter in question” and no deference is due to that position, even if, as the majority states, Maj. Op. at 586-87, counsel has taken the same position in another case while Order 5050.4B remains unchanged. See Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).
In construing “prudent” to have the same meaning in both statutes, the FAA’s interpretation is also consistent with our precedent. In Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190 (D.C.Cir. 1991), the court addressed a challenge to a *595 proposed airport expansion under both section 4(f) and the original version of what is now section 47106(c)(1)(B). In holding that the FAA violated neither statute when it rejected the proposed alternative as imprudent, the court observed that some of the AAIA “parrots” (i.e., “repeat[s] by rote,” Merriam at 846) some of section 4(f), specifically, the latter statute’s “feasible and prudent” requirement. 938 F.2d at 205. Responding to the petitioners’ theory that anytime the FAA violates section 4(f)(1) it automatically violates the AAIA, the court stated that “[a]n agency that fails to choose a ‘prudent and feasible alternative’ ” under the AAIA “obviously fails at the same time to choose a ‘feasible and prudent alternative’ ” under section 4(f). Id. Although the court had no occasion to hold that an imprudent alternative under the AAIA is necessarily also imprudent under section 4(f), see Maj. Op. at 585-86, there is nothing in the opinion to suggest that the word should be read differently in the two statutes and everything to suggest that the court understood the meaning of “prudent” in each to be the same. See 938 F.2d at 205. The petitioners there argued that any time the FAA violates section 4(f), it also violates the AAIA. See id. The court stated “we agree in principle with this aspect of [petitioner’s] theory,” and went on to hold that “we have little trouble deciding under [the AAIA] that while [the rejected alternative] may have been a feasible alternative to [the alternative chosen by the FAA], it was also an imprudent one.” Id.
Nonetheless, the majority concludes that petitioners’ “seemingly common sense point that a word’s meaning should be the same across comparable contexts,” Maj. Op. at 586, much less the FAA’s regulatory interpretation in Order 5050.4B, must yield to FAA counsel’s “distinctly laxer,” Maj. Op. at 586, interpretation of the meaning of the word “prudent” in the AAIA because of some contextual differences between section 47106(c)(1)(B) and section 4(f). Those differences, according to the majority, include that section 4(f) protects a narrower set of resources and prohibits “use” rather than “significant adverse effect[s].” Maj. Op. at 586; see Respd.’s Br. 44. These differences, which are not mentioned by the FAA in either the Record of Decision or Order 5050.4B, merely define the precise contours of each statute’s application; they do not suggest that the contexts are so dissimilar that the ordinary presumption does not apply. After all, two statutes need not be so similar as to be redundant in order for Congress to have intended identical terms to be read identically. In Smith v. City of Jackson, Miss., 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410, the Supreme Court held that Congress meant in the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (“ADEA”), to create a cause of action for disparate impact because the language prohibiting discriminatory conduct tracked the language of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. 544 U.S. at 233, 125 S.Ct. 1536. The Court reached this conclusion although the ADEA prohibits age discrimination while Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin, and thus, the objects of those statutes do not overlap at all. In contrast, section 4(f) and section 47106(c)(1)(B) have considerable overlap, as many of the resources protected by section 4(f) are also protected by section 47106(c)(1)(B), and an airport expansion under the AAIA is, by definition, a transportation project under section 4(f). Additionally, the Supreme Court in Smith applied the presumption that the statutes’ “parallel” language had the same meaning even though the ADEA “contains [additional] language that significantly narrows its coverage” relative to *596 Title VII. 544 U.S. at 233, 125 S.Ct. 1536. The same analysis is reflected in Order 5050.4B’s conclusion as stated in its preamble, but the majority ignores it.
The majority (and counsel for the FAA) also relies on NRDC v. FAA, 564 F.3d 549 (2d Cir.2009), which suggested that “prudent” should be read differently in the two statutes because section 4(f) safeguards only publicly owned lands, which require more protection than the public or private natural resources protected by section 47106(c)(1)(B). Maj. Op. at 586-87. There are several reasons to be wary of following the analysis in NRDC v. FAA. To begin with, the distinction drawn in NRDC v. FAA between the public lands covered by section 4(f) and the public and private lands covered by the AAIA is unpersuasive. There the court suggested that greater scrutiny is required of proposed appropriations of public lands because economic considerations and private interests will often support the use of public over private lands whenever possible. 564 F.3d at 566. Perhaps so, but this public/private distinction cannot be divined from Overton Park and it is belied by the facts in NRDC v. FAA itself, which involved privately owned wetlands that the owner/developer, anticipating the economic boom that would accompany airport expansion, offered to donate for airport construction purposes. Moreover, in NRDC v. FAA, the court referred to “broader” when it meant “narrower,” see Maj. Op. at 587 n. 1; it incorrectly stated that section 4(f) applies only to highway projects and not to airport expansions, id. at 566; and it never addressed the text of Order 5050.4B, much less its preamble stating that the FAA concluded the word “prudent” should be construed the same way in the airport expansion context.
Even assuming Congress sought through enacting the AAIA to “boost[ ] airport development unusually aggressively,” Maj. Op. at 587, Congress imported into the statute a limitation on the authority of the Secretary of Transportation that was well known and judicially understood in the context of the environmental impacts of transportation projects. To conclude on the basis of the overarching statutory purpose that a limitation to the effectuation of that purpose should be read narrowly, see id., assumes the conclusion about the meaning of “prudent” in the AAIA. Moreover, notwithstanding the majority’s conclusion about the AAIA’s broad purpose, Congress also provided in the statute that another of its objectives is that “airport development projects authorized pursuant to this title shall provide for the protection and enhancement of the natural resources and the quality of the environment of the Nation.” AAIA, Pub.L. No. 97-248 § 509(b)(5), 96 Stat. 324, 684 (1982). Nearly identical language immediately precedes section 4(f) in the DOT Act. See 49 U.S.C. § 303(a).
For these reasons, the majority’s effort to identify a statutory gap that may be filled by the “not new” post hoc position of counsel for the FAA is flawed and there is no basis for deferring to counsel’s “laxer” interpretation. Whatever ambiguity the word “prudent” may have has been resolved by the FAA’s Order 5050.4B, which reflects a reading that the word in section 47106(c)(1)(B) as it is defined in section 4(f) and Overton Park is most consistent with the statutes’ shared objectives.
II.
As this court has observed, “the case law uniformly holds that an alternative is imprudent under section 4(f)(1) if it does not meet the transportation needs of a project.” Citizens Against Burlington, 938 F.2d at 203 (emphasis in original) (citing *597 cases). The FAA “examined in detail the relative flaws” of Alternative Cl in terms of meeting the goals of the proposal under review, to expand the Fort-LauderdaleHollywood International Airport in order to reduce delays and expand capacity. Id. at 204. Therefore, consistent with the FAA’s conclusion that “prudent” is to be read the same way in the AAIA and in section 4(f), see Order 5050.4B, ¶ 1007.-e(4)(b), the FAA was not arbitrary and capricious in deeming Alternative Cl favored by petitioners to be imprudent due to its failure to meet operational and safety needs of the project. Petitioners’ objections are unpersuasive for the reasons stated by the majority. See Maj. Op. at 588-89.
With regard to their contention that Brooks Park is a section 4(f) resource, petitioners introduced no evidence in this proceeding that the area had been used as a qualifying park, “unless the FAA was obliged to regard any airplane-watching site with picnic tables as a ‘park of local significance,’ ” Maj. Op. at 590, which they do not claim. Rather, petitioners assert that the area was a neighborhood park for many years, see Petrs.’ Br. 46-^47, which, in the face of a bare administrative record, is insufficient, see, e.g., Stewart Park & Reserve Coal., Inc. v. Slater, 352 F.3d 545, 557 (2d Cir.2003). Their efforts to supplement the record in this court with documents from separate, prior environmental impact assessments related to an earlier airport expansion proposal fail for the reasons stated by the majority. See Maj. Op. at 590-91. Hence, as petitioners failed to show that Brooks Park was ever used as a section 4(f) resource, the court has no occasion to address petitioners’ objection that Broward County’s purchase and rezoning of Brooks Park was the type of end-around that FAA Order 1050.1E, which provides that section 4(f) “shall be considered to apply” in circumstances “[wjhere the use of a property is changed ... from a section 4(f) type use to a transportation use in anticipation of a request for FAA approval,” is designed to prevent. Order 1050.1E, App’x A, ¶ 6.2d; see Record Of Decision at A.9-1; Interlocal Agreement Between Broward County and City of Dania Pertaining to Expansion of Jurisdiction of the Fort Lauderdale-Hollywood International Airport 2-3 (1995).
Accordingly, I dissent in part, concur in part, and concur in the judgment.